McRae v. Farquhar & Albright Company.

Opinion delivered February 23, 1925.

1.    Appeal and error—question not raised below.—Whether an action to compel members of the text-book commission to execute a contract for furnishing books and a suit to restrain ,them from breaking such contract are suits against the State will not be considered where not expressly raised below nor discussed on ·appeal.

2.    Contracts—when consummated.—When a contract is actually entered into between the parties with intention to become bound thereby, it is consummated within the meaning of the law, though it was agreed that the terms of the contract should be reduced to writing.

3.    Schools and school districts—contract to furnish text-books.—Under Crawford & Moses' Dig. § 9075, providing that contracts for school text-books shall be prepared by the Attorney General, shall be executed in triplicate, and that the contractor shall execute a bond, which presumably is to be approved and accepted by the Text-Book Commission, a contract with such commission to furnish text books is not consummated until formal execution of the written contract and approval of the bond by the Text-Book Commission.

4.    Estoppel—refusal to execute written contract.—The Text-Book Commission is not estopped to refuse to execute a written contract under Crawford & Moses' Dig., § 9075, on terms of an accepted bid for furnishing text-books, nor from entering into a new contract with another publisher for the same books, where the time for performance had not arrived nor any benefits been accepted.

5. SCHOOLS AND SCHOOL DISTRICTS—DISCRETION OF TEXT-BOOK COM-
MISSION.—Members of the Text-Book Commission may recede
from negotiations' for the purchase of text-books at any time
before the final signing of the contract and approval of the
bond, as contemplated by Crawford & Moses' Dig., § 9075.

6. CONTRACTS—REDUCTION TO WRITING.—Where the statute requires
reduction to writing of a contract for text-books, there can be
no presumption of intention to consummate it in any other form.

(1)   Appeal from Pulaski Circuit Court, Third Divi-
sion; *Marvin Harris,* Judge; reversed.

(2)   Appeal from Pulaski Chancery Court, *John E.
Martineau,* Chancellor; reversed.

*H. W. Applegate,* Attorney General, and *Brooks
Hays,* Assistant, for appellant.

The act of signing the contract was one involving dis-
cretion, hence mandamus will not lie.   18 R. C. L. 116;
106 Ark. 506; 102 Ark. 470; 146 Ark. 255.   No valid con-
tract between the parties was consummated, the acts
undertaken being merely preliminary steps, the signing
of a formal contract, the consummation.   6 Eng. Ruling
Cases 170; 144 N. Y. 229; 29 L. R. A. 431; 116 S. W. 693;
52 Am. Dec. 291; 103 Mo. 70; 26 Okla. 209.   Our court
has held in 97 Ark. 613 and 95 Ark. 421, that there must
be a meeting of the minds on all essentials.   Appellee is
charged with the limited powers and duties of appellant,
and is bound by the law respecting the making of any
contract.   94 Ark. 583; 43 Ind. app. 58; 167 Ind. 622; 6
R. C. L. p. 618; 66 L. R. A. 812.   The statutory require-
ment rather than the intention of the parties is controll-
ing. 184 U. S. 524.   See also 137 N. Y. S. 384; 87 Ark. 93;
108 Minn. 322; 122 N. W. 173.   Mandamus will not lie
against the Governor at all.   1 Ark. 570; 18 R. C. L. 199;
45 L. R. A. (N. S.) 500; 40 L R. A. (N. S.) 505; 156 N. Y.
136, 41 L. R. A. 231.

*H. E. Mecartney* and *Owens & Ehrman,* for appellee.

A valid contest was entered into and the board did
not have the discretion to recede from its actions, espe-
cially in view of the extensive preparation made by
appellee looking to the fulfillment of the contract. 262

S. W. 728; 93 S. E. 759; 249 U. S. 313. When the essential terms of a contract are entered into, it is binding upon the parties, notwithstanding the fact that it is later reduced to writing. 140 Ark. 448. The duty of the Governor as chairman, to sign the contract, was purely ministerial, and he could be compelled to do his duty by mandamus. 129 Ark. 286; 39 Cal. 189.

McCulloch, C. J. The statutes of this State provide for the creation of the State Textbook Commission, a board composed of the Governor, the State Superintendent of Public Instruction, and seven other citizens, with authority to select and adopt a uniform series of books for use in the public schools of the State, and to enter into contracts with publishers for furnishing the books at agreed prices for a period of six years. The statute provides that the Commission, after its organization, shall advertise for bids from publishers of schoolbooks, and, at a public meeting of the Commission, on receipt of bids, shall select and adopt the books to be used, and consider bids from publishers for furnishing the same. Crawford & Moses' Digest, § 9065 *et seq.*, as amended by Acts of 1921, p. 326, and Acts of 1923, pp. 198, 347. The section of the statute relating to the form of contract with publishers reads as follows:

"Section 9075. *Contracts and bonds.* After the Textbook Commission shall have adopted the books hereinbefore provided, the Commission shall notify the publishers to whom the contracts shall have been awarded, and it shall be the duty of the Attorney General to prepare said contracts, and said contracts are to be executed by the chairman and secretary of said Commission. Said contracts are to be executed in triplicate, one copy to be kept by the contractor, one copy by the State Superintendent of Public Instruction, and one by the Secretary of State. At the time of the execution of the aforesaid contracts, the contractor shall enter into a good and sufficient bond, with a bonding company authorized to do business in the State of Arkansas, in a sum to be determined by the Commission, but not

more than $20,000, and conditioned upon the faithful performance of all the conditions of such contract, not contrary to the provisions of this act. Such bonds shall not be exhausted by a single recovery thereon, but may be sued upon from time to time until the full amount thereof is recovered. In case of recovery on such bond, the Commission may require such additional bond as may be necessary to keep the bond equal to its original amount.''

Appellee, a foreign corporation, is engaged in the business of publishing school books, and it instituted against the members of the State Textbook Commission the two actions involved in these appeals, one an action at law to compel the chairman and secretary of the Commission, by peremptory mandamus, to execute a written contract covering the terms of appellee's accepted bid for furnishing certain books, and the other in the chancery court to restrain the State Textbook Commission from breaking an alleged contract with appellee by entering into a new contract with some other publisher for books covered by appellee's contract.

The same facts were, in substance, stated in each of the complaints, and the cases were heard below on an agreed statement of facts in substantial conformity with the material facts alleged in the complaint. The circuit court, on a trial of the case, decided in favor of appellee, and ordered the chairman and secretary of the State Textbook Commission to approve the bond presented by appellee and execute the form of contract which had been previously prepared by the Attorney General and signed by appellee. The chancery court, on final hearing of the cause, rendered a decree restraining the State Textbook Commission from breaking the alleged contract with appellee and from letting the contract to another concern.

The material facts are undisputed. The State Textbook Commission advertised for bids, in accordance with the statute, for furnishing textbooks, the bids to be presented and opened on December 21, 1923, and on that

day appellee filed its proposal to furnish a series of textbooks on the subject of writing. On the day mentioned the Commission opened the bids, and accepted the one of appellee, and awarded to appellee the contract for furnishing the books mentioned in its proposal. The secretary of the Commission mailed a notice to the county and city superintendents in the State, advising them that the Commission had adopted appellee's proposal to furnish a textbook termed, ''Applied Movement Writing,'' and also notified appellee in writing of the acceptance of its proposal. The Commission also sent to appellee by mail a form of contract in triplicate, prepared by the Attorney General, as provided by law, and requested that the same be executed and returned to the secretary of the Commission, accompanied by a surety bond in the sum of $5,000; and appellee signed the contract and executed the bond as requested, and returned the same to the secretary of the Commission. The performance of the contract was to begin September 1, 1924. The chairman and secretary of the Commission did not sign the contract, nor was there a formal approval of the bond, and nothing further transpired between the Commission and appellee with relation to the contract until February 7, 1924, when appellee was notified by the secretary of the Commission that there was to be a meeting of the Commission on a stated date before any contracts would be signed. There was a meeting of the Commission on March 17, 1924, and the Commission, by vote, decided to postpone the signing of the contracts until a later date; and, at a meeting held by the Commission on May 24, 1924, by vote the acceptance of appellee's bid was reconsidered and the bid rejected. Prior to the time that appellee was notified that there was to be a reconsideration of the acceptance of its bid, it had entered into preparations for the performance of the contract.

The contention of appellee is that a binding contract was consummated by the written acceptance of appellee's written proposal, notwithstanding the fact

that the terms of the agreement were to be reduced to writing in a formal contract to be signed by the parties.

We pretermit any discussion of the question whether or not these are suits against the State, since the question was not expressly raised below and has not been discussed here, and we will confine ourselves to a discussion of the principal question which is argued by counsel, the solution of which will control the decision of the cases—that is to say, whether or not there was a consummation of the contract between the State Textbook Commission and appellee.

This court has, in many decisions, recognized and enforced the principle of law that, when a contract is actually entered into between the parties with intention to become bound thereby, it is consummated within the meaning of the law, notwithstanding the fact that it was agreed that the terms of the contract should be reduced to writing. *Emerson* v. *Stevens Grocer Co.,* 95 Ark. 421; *Skeen* v. *Ellis,* 105 Ark. 513; *Friedman* v. *Schleuter,* 105 Ark. 580; *Alexander-Amberg Co.* v. *Hollis,* 115 Ark. 589; *Kilgore Lumber Co.* v. *Halley,* 140 Ark. 448. The precise language used in the several opinions of this court is slightly variant, but the substance of the rule in each case is that it turns on the question of the intention of the parties whether or not they intended to consummate a contract prior to its formal reduction to writing. In the case of *Friedman* v. *Schleuter, supra,* we quoted with approval the language of Lord Blackburn in the case of *Rosster* v. *Miller,* 3 App. Cas. (Eng.) p. 1151, as the basis of the rule, as follows:

"So long as they are only in negotiation, either party may retract; and, though the parties may have agreed on all the cardinal points of the intended contract, yet, if some particulars essential to the agreement still remain to be settled afterwards, there is no contract. The parties, in such a case, are still only in negotiation. But the mere fact that the parties have expressly stipulated that there shall afterwards be a formal agreement prepared, embodying the terms, which shall be signed

by the parties, does not by itself show that they continue merely in negotiation. It is a matter to be taken into account in construing the evidence and determining whether the parties have really come to a final agreement or not.''

In another English case, decided by the same court about that time (6 Eng. Rul. Cases, p. 170), the rule is laid down as follows:

''Where parties agree in a binding manner to all the terms of the contract, the agreement is none the less a contract because it appears from the terms of the written agreement, or otherwise, that the parties intended to embody the terms in a more formal contract; but, where it appears that the drawing up and signing a formal contract was contemplated as a condition precedent of the final transaction by which the parties were to be bound, there is no contract until this is done.''

The decision of the present case therefore comes down to the question whether the parties intended, and the statute permits, the consummation of a contract prior to its formal reduction to writing, or whether the formal execution of the written contract and the approval of the bond were essential to the consummation of the contract. Our conclusion is that, under the statute authorizing this contract, there can be no consummation until formal execution of the writing required by the statute and the approval of the bond which the statute also requires; nor could there be any presumed intention of the parties to consummate the contract prior to the fulfillment of those details. It will be observed that the statute (Crawford & Moses' Digest, § 9075) provides that the contract must be prepared by the Attorney General, who is the law officer of the State, and that it must be executed in triplicate. It also requires that the bond be executed, which must, presumably, be approved and accepted by the Commission. In order to comply with this statute, there must be a written contract, and one which in form must not only be satisfactory to the Commission, but one which the Attorney General,

as law officer of the State, prepares. These requirements of the statute are necessarily mandatory, and no unexecuted contract is valid unless consummated in the required manner. *Griggs* v. *School District,* 87 Ark. 93. There is no element of estoppel in the present case, for the reason that the time for performance of the contract had not arrived, and no benefits under the contract had been accepted.

The design of the statute was to lodge a discretion in the State Textbook Commission with respect to the sufficiency of the bond and the form of the written contract as prepared by the Attorney General, and this discretion could be exercised at any time prior to the formal signing of the contract and the approval of the bond.

The motives or reasons of the members of the Commission in declining to consummate the contract are unimportant, for, however capricious the conduct of the members of the Commission was, they had a right to recede from the negotiations at any time prior to formal consummation of the contract. In other words, until the Commission became bound by a legally consummated contract, there could be a rescission from the negotiation by either party.

Counsel for appellee press upon our attention as controlling in this case the decision of the Supreme Court of the United States in *U. S.* v. *Purcell Envelope Co.,* 249 U. S. 313, and it must be conceded that there is much similarity in some respects between that case and the one now under discussion. There is, however, in that case one important distinction, in that there was no statute, so far as we have been able to discover—certainly none referred to in the opinion of the court—which expressly requires that the contract between the government and the other party should be reduced to writing. If there was any such practice, it was presumably a mere departmental rule and not one absolutely required by the statute. That, we think, is an important distinction, for, as we have already said, where there is a statute requiring that a contract be reduced to writing, there

can be no presumption of an intention to consummate the contract in any other form.

The decision of the trial court in each of the cases before us was erroneous, and the judgment of the circuit court in the one case, and the decree of the chancery court in the other case, are reversed, and the complaint in each case dismissed. It is so ordered.