SCHULL CONSTRUCTION CO., Petitioner and Appellant
v. BOARD OF REGENTS OF EDUCATION, et al., Respondents

(113 N.W.2d 663)

(File No. 9998. Opinion filed March 9, 1962)

**Austin, Hinderaker & Hackett, Stover, Beardsley & Osheim,** Watertown, for Appellant.

**A. C. Miller,** Atty. Gen., **Alan Williamson,** Asst. Atty. Gen., for Respondents.

BIEGELMEIER, J.   This is an application for mandamus to compel the Board of Regents to execute a contract with petitioner for the general construction of a laboratory-classroom building at Northern State Teachers College to replace one that burned in 1961. The trial court denied the application February 6, 1962. Because an early determination of the proceeding was desirable in view of

of the educational and public interest involved, the court heard arguments shortly after the appeal was filed. We affirm.

Chapter 371 of the 1961 Session Laws appropriated $864,000 for "constructing, furnishing, and equipping of a laboratory-classroom building * * * with heating, plumbing, ventilation, water, sewer, and electrical facilities * * *". The design and construction was to be under the supervision of the State Engineer as provided in SDC 55.18. Pursuant to that chapter the State Engineer and the other members of the building committee caused plans and specifications to be prepared; these contained add and deduct alternates. The advertisement for bids stated separate bids would be received for "General; Heating and Plumbing; Ventilation; Electrical; and Laboratory Equipment Work". Petitioner was one of the bidders for the General Contract. At the opening of bids December 15, 1961, the State Engineer declined to give the Board of Regents a recommendation on the project. The Board then adopted a resolution "that the following bids be approved for award pending the signing of contracts and the furnishing of performance and payment bonds * * *. For General Construction Work: To Schull Construction Company, Watertown, South Dakota in the Base Bid amount of $553,858 and including Alternates Nos. 1, 3 and 4 making a total contract amount of $580,216." Other bids separately listed thereafter for Plumbing and Heating, Electrical Work and Ventilation Work bring the total of awards to $817,619. At each of the two places in the resolution under the heading "For Laboratory Equipment", reserved for the name of the bidder and the amount of the bid, the word "none" appears. No award was made for this category; it was not listed as an alternate. Of the three bids for this equipment, the Kewaunee Laboratory Equipment Co. bid of $56,148 appeared to be the lowest.

At a meeting December 19, 1961 the Board, having had advice from the Attorney General, again considered and

discussed their prior action. It then passed Resolution 74—1961 which in part is:

"WHEREAS, it now appears that the State Board of Regents cannot legally accept the bid and enter into a contract for the erection of a classroom and laboratory building at Northern State Teachers College at Aberdeen, South Dakota which includes Alternate No. 1, and

"WHEREAS, it appears that the only bid which the Board can legally accept is the base bid for the construction of the building and equipping the building hereinbefore described, Now, therefore,

"BE IT RESOLVED, that the action of the State Board of Regents on December 15, 1961 accepting the bid which included Alternate No. 1, be, and the same is hereby rescinded, and

"BE IT FURTHER RESOLVED, that the bid of the low bidder on the base bid be accepted and the contract be awarded to such low bidders as follows:

"FOR GENERAL CONSTRUCTION
Kuipers Construction Company
Mitchell, South Dakota

| | | |
|---|---|---|
| in the Base Bid amount of | $549,640.00 | |
| less Alternate No. 3 | 3,600.00 | |
| Total contract amount | | $546,040.00" |

The resolution included awards to the same bidders named in the December 15th resolution for the other work in slightly smaller amounts, but also included an award for laboratory equipment to Kewaunee on its $56,148 bid. The new total for all the bids "accepted" at this meeting was $822,079. On December 23, 1961 petitioner presented to the President and Secretary of the Board of Regents a written construction contract and bond signed by it generally in forms set forth in the specifications except as to the time

of completion of the contract. The Board refused to enter into or sign the contract. This action followed.

Petitioner contends that by the December 15, 1961 resolution approving its bid for award, the Board entered into a binding contract. Pertinent parts of Chapter 300, Session Laws of 1939, now in the SDC 1960 Supp. applicable are: Section 65.0701-2 "All contracts * * * must be let to the lowest responsible bidder". Section 65.0701-3 requires the advertisement for bids for contracts of the type here involved. Section 65.0701-4 states:

> "Where the advertisement for bids is for * * * construction * * * each bid must contain a certified check * * * for five per cent * * * as a guaranty that such bidder will enter into a contract with said public corporation, its board or officers thereof, in accordance with the terms of such letting and bid in case such bidder be awarded the contract. * * * The certified check * * * shall be returned to him forthwith upon the execution of the contract and surety hereafter provided for."

Section 65.0701-5 provides:

> "All contracts shall be made and set forth in writing and shall be signed on behalf of the public corporation by the proper officials thereof. * * * The writing shall embody therein all of the terms and conditions of the contract * * *."

Section 65.0704-1 declares:

> "It shall be unlawful * * * to enter into any contract in violation of the terms of this act, and any such contract entered into shall be null and void and of no force and effect."

[1, 2] The statutes outline the procedure to be followed by public officers in the advertising for bids and awarding or letting them; all are preliminary to the objective— the written contract. State ex rel. Cleveland Trinidad Pav. Co. v. Board of Public Service, 81 Ohio St. 218, 90 N.E.

389. The wording of the December 15th resolution that the bids "be approved for award pending the signing of contracts" etc. clearly indicated that the awards were tentative and subject to the actual signing of contracts. Pending is defined as until—while awaiting an occurrence or the conclusion of an action. Webster's Dictionary, Second Edition. The new Third Edition gives a derivation from the word suspend and a definition as a period of continuance or indeterminacy. Such being the statutes and resolution, contracts did not come into being, nor did the Board intend that until the "signing of contracts". There can be no presumed intention of parties to consummate a contract prior to formal execution of the writing directed by statute, Davis v. Lamro Independent School Dist., 51 S.D. 548, 215 N.W. 776, especially where the award was made subject to the signing of contracts. Before they were signed the Board had the power to reconsider and rescind the acts theretofore taken and, in the absence of showing arbitary action or fraudulent intent to the injury of the complaining party, courts will not interfere. McRae v. Farquhar & Albright, 168 Ark. 38, 269 S.W. 375; Covington v. Basich Bros. Const. Co., 72 Ariz. 280, 233 P.2d 837, 840. The specifications set out nearly verbatim the statutes governing the letting and the form of contracts to be signed. In Edge Moor Bridge Works v. Bristol County, 170 Mass. 528, 49 N.E. 918, a formal written contract, according to the form submitted to the bidders, was expressly provided for. The court there said:

"The ground of action relied on by the plaintiff corporation is not that the county commissioners actually entered into a contract with it * * * but that they agreed to enter into such a contract, and afterwards refused to do so. To support this view, the plaintiff relies on a vote of the county commissioners accepting its bid and awarding the contract. * * * where the supposed contract is found only in a vote passed by a board of public officers, which looks to the preparation and execution of a formal contract in the future, care must

be taken not to hold that to be a contract which was intended only to signify an intention to enter into a contract. * * * The vote was but a step in the negotiation. It showed an expectation and an intention, for the time being, to enter into a contract with the plaintiff, upon the basis of its proposals. But the execution of the contract was an act to be done in the future, and, till that should be done, no intention to be legally bound is fairly to be inferred. The vote meant merely to say that the plaintiff's proposals were accepted, subject to the preparation and execution of a formal contract."

This reasoning was followed by reference to the statute which provided the contracts be in writing, similar to those in the Arkansas and Ohio decisions cited above. By the terms of its resolution, the Board of Regents indicated it was mindful of, and expected to comply with the statutory requirement that all contracts shall be made in writing and be signed by the proper officials. Water Commissioners v. Brown, 32 N.J.L. 504; Edge Moor Bridge Works v. Bristol County, supra; see also Pfaff Const. Co. v. Leonard, 40 Ohio App. 246, 178 N.E. 328; Covington v. Basich Bros. Const. Co., 72 Ariz. 280, 233 P.2d 837.

In Davis v. Lamro Independent School Dist., 51 S.D. 548, 215 N.W. 776, a school district by written lease for one year, occupied the premises and paid the rent for three months after the year expired. Section 1061 of the 1919 Code (now SDC 38.0415) declared that if the lessee of real property remained in possession, after the expiration of the hiring and the lessor accepted rent, the parties are presumed to have renewed the hiring on the same terms for the same time, not exceeding one year. The lessor sued for the remaining nine months' rent of $75 per month. Section 7548 of the 1919 Code relating to school districts provided no expenditure of more than $100 should be made except in accordance with a written contract. This court wrote "that school districts, no less than purely municipal corporations, are bound by legislative restrictions

upon their contracts, appears to be the rule: * * *. 'Where there is a statute requiring that a contract be reduced to writing, there can be no presumption of an intention to consummate the contract in any other form.'"

This conclusion finds further support in the arrangement and wording of SDC 1960 Supp. 65.0701-1 through 65.-0704-1 as they appear there and originally in the following sections of Ch. 300 of the 1939 Session Laws. Section 4 first refers to a bidder, then to the successful bidder; Section 5 relates to the contract, its contents and signing. Only then in Section 6 when the statute refers to the public corporation appointing a superintendent to report the work done by and payments to be made to the "contractor" under the terms of the contract is the successful bidder so designated. Section 4 also states the certified check for 5% is "a guaranty that such bidder will enter into a **contract** "and this 5%" guaranty of the successful bidder shall be returned to him forthwith upon the execution of the **contract** and surety * * *." Section 7 requires a surety bond in an amount not less than the contract price for the faithful performance of the **contract**. (Emphases supplied.) The 5% is a guaranty the bidder will enter the contract; the surety bond that he will perform the contract when entered into; thus, two different guaranties for two different obligations.

■ ■ While most of these statutes were also set out in the specifications, persons doing business with the state or public bodies must take notice of the scope of their powers and prescribed manner of exercise. State ex rel. Cleveland Trinidad Pav. Co. v. Board of Public Service, 81 Ohio St. 218, 90 N.E. 389, 392; Campbell Bldg. Co. v. State Road Commission, 95 Utah 242, 70 P.2d 857, 865. The purpose of these statutes is for the protection of the public rather than that of bidders. Tri-State Milling Co. v. Board of County Commissioners, 75 S.D. 466, 68 N.W.2d 104.

Petitioner cited Middleton v. City of Emporia, 106 Kan. 107, 186 P. 981 and Williams v. City of Stockton, 195 Cal. 743, 235 P. 986. The Kansas court expressly recognized cases holding a contract is not complete until committed

to writing and formally signed, because of a statute or intention of the parties that a writing precede the contract; the opinion states no such situation was there presented. In the California case, the city charter contained no provision for a written contract when the bid was accepted, it having been passed and become effective after the acceptance of the bid. Our conclusion makes it unnecessary to consider the availability of mandamus or whether the Board's action at the December 15th meeting was invalid for failure to award the laboratory equipment bid by reason of claimed inability to do so within the appropriation.

Affirmed.

RENTTO, P. J., and ROBERTS and SMITH, JJ., concur.

GRIEVES, Circuit Judge, sitting for HANSON, J., disqualified, concurs in result.