237 So.2d 569 (1970)
The HOUSING AUTHORITY OF the CITY OF FORT PIERCE, a Public Corporation, Appellant,
v.
D.H. FOSTER, Paul J. Kortsch and Jack Y. Williams Doing Business As Foster, Kortsch & Williams, a Joint Venture, Appellees.
No. 2618.
District Court of Appeal of Florida, Fourth District.
May 27, 1970.
Rehearing Denied August 12, 1970.
Larry Klein, of Cone, Wagner, Nugent Johnson, McKeown & Dell, West Palm Beach, and Raymond E. Ford, Fort Pierce, for appellant.
Harold C. Farnsworth, of Hall, Farnsworth, Rousseau, Wilkinson, Gordon & Lawrence, Tampa, William P. Doyle, Fort Lauderdale, and Elton H. Schwarz, Stuart, for appellees.
REED, Judge.
The plaintiffs as joint venturers pursuant to an invitation for bids published by *570 the defendant, The Housing Authority of the City of Fort Pierce, submitted a written bid to construct two housing projects designated in the invitation as "FLA. 41-1 and 41-2". The bid form contained a separate bid for Project 41-1 and 41-2 and a consolidated third bid for both projects. After the bid opening, the defendant's executive director announced that the plaintiffs were the apparent low bidders on both projects. The defendant passed a resolution dated 4 May 1961 providing:
"Be it resolved by the Commissioners of the Housing Authority of the City of Fort Pierce that D.H. FOSTER, PAUL J. KORTSCH AND JACK Y. WILLIAMS (A JOINT VENTURE) of 3836 CENTRAL AVENUE, ST. PETERSBURG 11, FLORIDA be awarded the contract to construct projects known as FLA. 41-1 and 41-2 for the amount of FLA. 41-1 $553,295.00, FLA. 41-2 $1,535,482.00, COMBINED PROPOSAL  $2,088,777.00 and has complied with General Conditions as set forth in specifications.
"This award is subject to approval by the PUBLIC HOUSING ADMINISTRATION. There has been no disapproval of the project by the local governing body of the community or by referendum of the voters."
Thereafter, the Housing Authority and the plaintiffs signed a formal contract with respect to Project 41-2. The defendant Housing Authority, however, refused to sign a formal contract with respect to Project 41-1 and gave as its reason the pendency of a law suit that might affect the location of the project. The suit was terminated in the latter part of June 1961. Instead of signing the contract with the plaintiffs on Project 41-1, the defendant called for new bids and ultimately awarded the contract to another contractor. The plaintiffs filed the present suit for damages for breach of contract on the theory that their negotiations with the defendant had reached the status of a binding contract to construct Project 41-1.
The cause was presented to a jury which rendered a verdict against the Housing Authority. Final judgment was entered and this appeal by the Housing Authority followed. The primary issue presented by the appellant is whether or not the trial judge at the close of the plaintiffs' case erred in failing to direct a verdict for the appellant.
The grounds for the motion for directed verdict were, first, that no written contract had been entered into between the plaintiffs and the defendant and, secondly, that the acceptance of the plaintiffs' bid was conditioned upon the approval of the federal Public Housing Administration and that such approval was never forthcoming. Under these circumstances, the appellant's argument goes, no contract was proved with respect to Project 41-1 as a matter of law.
The appellant cites in support of its argument Smart v. City of Philadelphia, 1903, 205 Pa. 329, 54 A. 1025; Covington v. Basich Bros. Const. Co., 1951, 72 Ariz. 280, 233 P.2d 837; Wayne Crouse, Inc. v. School District of Borough of Braddock, 1941, 341 Pa. 497, 19 A.2d 843; and Schull Construction Co. v. Board of Regents of Education, 1962, 79 S.D. 487, 113 N.W.2d 663. In Smart v. City of Philadelphia, supra, the plaintiff had been awarded a contract to pave certain streets and was notified of the award by the defendant. Later the city advised the plaintiff that it would not enter into a written contract with the plaintiff for the performance of the work because the city had determined that a third party was liable for the work and that the third party  not the city  was obligated to perform the work. Suit was then brought against the city for damages on account of the city's refusal to enter into the formal written contract. On appeal the Supreme Court of Pennsylvania affirmed the dismissal of the case by the trial court on the theory that until the execution of the written contract the city was *571 not bound. The affirmance, however, was based on a provision in the city charter which required contracts with the city to be in writing.
In the case of Wayne Crouse, Inc. v. School District of Borough of Braddock, supra, a school district had invited bids on a project. The plaintiff was the apparent low bidder and a resolution was passed by the school district accepting the plaintiff's bid. Before the formal contract was signed, a union protested the award of the contract to the plaintiff. The award was then rescinded by the school district. The plaintiff sued for damages for breach of the contract. It was held that the school district could not be bound until execution of a formal written contract. This holding, however, was based on a provision in the school code which was interpreted to require contracts of the school district to be in writing.
In Schull Construction Co. v. Board of Regents of Education, supra, a mandamus action was filed to compel a contract to be awarded after the plaintiff's bid had been accepted. The Supreme Court of South Dakota affirmed the trial court's denial of the writ. The primary ground for the denial apparently was a statutory limitation on the Regent's authority to contract except by written contract.
The common thread running through these three cases is the statutorily imposed requirement that the public body contract only by a written document.
The case of Covington v. Basich Bros. Const. Co., supra, is worth mentioning only for the purpose of distinguishing. The opinion in that case flatly says that the public body was entitled to revoke a contract award at any time before a formal written contract was executed. The issue that was before the court was not the binding character of the negotiations prior to formal contract, but the right of a bidder to receive back the bid guaranty which he gave to secure his performance of the terms of the bid after he had received the award, but was denied the contract. This case is of no assistance here because we are not dealing with an attempt to recoup the bid guaranty.
Coming back to the theory of Smart, Wayne Crouse, Inc., and Schull Construction Co., supra, it is appropriate to examine the statutory authority of the defendant Housing Authority. The defendant is a public corporation created by F.S. chapter 421, F.S.A. The powers of the corporation are spelled out in F.S. Section 421.08, F.S.A. which provides in subsection (1) that the Public Housing Authority shall have the power:
"* * * [T]o make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority; and to make and from time to time amend and repeal by-laws, rules and regulations, not inconsistent with this chapter, to carry into effect the powers and purposes of the authority."
The defendant's contention that it could not be bound in the absence of a written contract when it was the sole cause of the absence of the written contract is unappealing unless clearly supported by the statute. The statute does not expressly state that the Public Housing Authority may contract only by the use of a written contract. The statute uses the words "to make and execute contracts" (emphasis added) which suggests an alternate means of contracting available to the authority. An oral contract might be made or a written contract might be executed. Hence, it appears to us reasonable to construe the statute as not limiting the Housing Authority's power to contract to the written form only.
There is a well established rule that where parties intend a negotiation to be reduced to a formal writing there is no binding contract until a formal writing is achieved. Ocala Cooperage Co. v. Florida Cooperage Co., 1910, 59 Fla. 390, 52 So. 13. However, the rule of Ocala Cooperage Co., *572 supra, is properly applied only where the parties do not intend to be bound by their negotiations until a formal written contract is executed. Mann v. Thompson, Fla.App. 1958, 100 So.2d 634, 637.
Turning to the facts in our case, it is clear that both parties contemplated the execution of a formal written contract. The Invitation For Bids, appellant's written Instructions To Bidders which accompanied the Invitation For Bids, and the bid form itself all contemplated that a formal written contract would be executed by the parties. For example, the Instructions To Bidders in paragraph 17(a) states:
"Subsequent to the award and within ten days after the prescribed forms are presented for signature, the successful bidder shall execute and deliver to the Local Authority a contract in the form included in the Specifications. * * *"
What is not so clear is whether or not the parties intended their negotiations to have no binding effect until a formal written contract was executed. The bid submitted by the plaintiffs was an offer to build Project 41-1 for a specific price in accordance with definite specifications which even included the form of written contract to be used after the award. No material term of the contemplated contract was omitted from the bid except the unit prices to be used by the parties for the purpose of later adjusting the contract price on account of extras or changes in the contract work. Subsequent to the submission of the bid and the award of the contract by the formal resolution of defendant Housing Authority of the City of Fort Pierce, the parties met and agreed upon the unit prices and such agreement was reduced to writing bearing date 9 May 1961.
Further evidence on the question is found in the Instructions To Bidders. Section 17(d) of the instructions says:
"The failure of the successful bidder to execute such contract and to supply the required bond within ten days after the prescribed forms are presented for signature, or within such extended period as the Local Authority may grant, based upon reasons determined adequate by the Local Authority, shall constitute a default, and the Local Authority may either award the contract to the next responsible bidder or readvertise for bids, and may charge against the bidder the difference between the amount of the bid and the amount for which a contract for the work is subsequently executed. * * *" (Emphasis added.)
This provision in the Instructions To Bidders indicates that the parties were looking toward the execution of a formal written contract, but it also indicates that in advance of such contract there was a binding agreement. Unless the bidder was bound, the default provisions would be meaningless. In addition paragraph 18(c) of the Instructions To Bidders provides:
"Wherever, in the Specifications, reference is made to `the Contract' this shall be construed to refer to the Contract entered into through the acceptance of any one or more of the proposals enumerated in the bid form * * * and all applicable provisions of the Specifications and Drawings for each project will govern the Contract with equal force." (Emphasis added.)
This rather clearly suggests that a binding contract could be reached prior to the signing of the formal written contract.
One further factor needs to be considered. That is the statement in the award resolution to the effect that the award was conditioned on the approval by the federal Public Housing Administration. The attachment of this condition to the acceptance of the plaintiffs' offer, i.e., the bid, in no way varied the terms of the offer. The significance of this condition was simply to condition the acceptance expressed in the resolution upon approval by the federal Public Housing Administration. The *573 acceptance was not legally operative until such approval was forthcoming. 1 Corbin on Contracts § 61, page 252. There was ample evidence before the jury from which it could have inferred that the Public Housing Administration gave whatever approval was required by the resolution. For example, the unit price agreement which was signed under date 9 May 1961 was executed subsequent to the resolution and bore an execution by the Public Housing Administration. Also the testimony of Mr. Williams, one of the plaintiffs, as to his conference on 9 May 1961 in Atlanta with Mr. Knudsen, an agent for the Public Housing Administration, and an attorney for the Public Housing Administration, could form the basis for a reasonable inference that the condition had been fulfilled.[1] Furthermore, the evidence that the plaintiffs were allowed to proceed with Project 41-2 could indicate that the required approval had been given.
We conclude that under the facts in the present case: (a) there was no statutory bar to recovery based on a contract resting partly in parol; and (b) there was substantial evidence from which the jury could have determined that the negotiations between the parties reached the point of a binding contractual relationship and found a verdict for the appellees. In sum, the trial judge did not err in denying the appellant's motion for a directed verdict.
We have carefully reviewed the appellant's second point on appeal, but conclude that it does not demonstrate error or require discussion. Likewise, we have not overlooked the additional point which the appellees raised in their brief, but we conclude that it too is without merit.
The judgment appealed from is affirmed.
CROSS, C.J., and METZGER, JOSEPH P., Associate Judge, concur.
NOTES
[1] Mr. Williams testified that on the day the plaintiffs' bid was submitted, but before the bid form was prepared, he told his associate, Kortsch, to add $50,000.00 to the bid on Project 41-1. Kortsch did this, but erroneously took $50,000.00 off of the bid price on 41-2. Mr. Williams brought this error to the attention of Mr. Knudsen in Atlanta at the May 9th conference. When he presented this problem, he testified that the following occurred: "* * * Mr. Knudsen, after stating this, I said, well we certainly have a problem. And, he stated that he felt definitely that the situation down there, down in Fort Pierce, would be resolved in a short time and that in view of that it wouldn't make any difference because our over-all bid on the total figure was all right, and I concurred with this. * * *" (Emphasis added.)