[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION REGARDING WHETHER MOTIONS TO DISMISS BASED UPON ALLEGED LACK OF STANDING SHOULD BE GRANTED WHERE FIRST BIDDER CHALLENGES MUNICIPAL CONTRACT AWARDED TO SECOND BIDDER
I. RELEVANT FACTS
On November 20, 1989 plaintiff Kendland Company, Inc. (hereafter "Kendland") — a plumbing and mechanical contractor — submitted a bid for work in modernizing certain premises of defendant Bridgeport Housing Authority (hereafter "BHA") known as Charles F. Greene Homes. According to the Invitation to Bid of BHA the work involved but is not limited to a new plumbing system and a new heat distribution system. By letter dated November 29, 1989 defendant BHA informed the plaintiff that it was awarded the contract by the BHA Board of Commissioners subject to the approval of the Department of Housing and Urban Development. The amount of the contract matched the amount of the plaintiff's bid, viz $4,390,000.
At a preconstruction meeting held on January 23, 1990 at the BHA and attended by John Smith, Jr., plaintiff's Vice President, a dispute arose as to whether the amount of the plaintiff's bid included all of the items of work. Also present at this meeting was Clarence Craig, the BHA Executive Director who expressed the concern of BHA as to whether work items subject of the bid and for a resultant proposed contract were or were not included in plaintiff's base bid. Because of that concern neither the Notice to Proceed document, which would have authorized the plaintiff to commence work, nor the contract for the work was signed by defendant BHA at that meeting. However, both documents were brought by BHA for signing at the meeting. Although Vice President Smith signed the Notice to Proceed, pursuant to Clarence Craig's request he did not sign the proposed document.
Subsequent correspondence, dated February 9, 1990, from CT Page 4952 plaintiff to BHA disclosed that the plaintiff proposed to add $641,013.63, to their bid for the work — an amount not included in the original bid due to the manner in which the plaintiff read BHA's bid specifications. By letter dated March 9, 1990, BHA informed plaintiff of their irreconcilable differences over bid quotations relative to the bid documents and notified plaintiff of BHA's intention to rebid the project. By letter of March 14, 1990 BHA notified Kendland that BHA had rescinded the award of the contract, and that BHA would be advertising for bids.
On March 26, 1990 plaintiff Kendland and defendant Atlas-W.R. Johnson, a joint venture (hereafter "Atlas"), submitted bids for the Charles F. Greene modernization project at the rebidding. Plaintiff Kendland submitted a base bid of $4,757,954. Defendant Atlas submitted a base bid of $4,446,000 — a difference of $311,954. In a letter of April 10, 1990 from BHA defendant Atlas was informed that it had been awarded the contract, subject to the approval of the Department of Housing and Urban Development (HUD). By letter dated May 15, 1990 HUD informed BHA that HUD had reviewed the bid of defendant Atlas and that HUD had no objection to the award of the subject bid to defendant Atlas. On May 24, 1990 BHA and defendant Atlas signed the contract for the modernization of the Charles F. Greene Homes.
Plaintiff Kendland has brought this action in two counts. In the First Count — directed against BHA — the plaintiff claims that having met all of the conditions prerequisite to being awarded the contract on the first bid, it was awarded the contract which BHA breached by canceling the contract and rebidding the project. In the Second Count — directed against BHA and defendant Atlas — the plaintiff claims that the award of the contract to the defendant Atlas on the second bid was arbitrary, capricious and contrary to law in that (1) BHA was bound by the previous award of the contract to the plaintiffs, (2) Atlas' bid was not responsive, and (3) plaintiff's bid was the lowest responsive bid in the rebidding. In this action plaintiff seeks damages for breach of contract and an order (1) declaring the contract to defendant Atlas as null and void, and (2) prohibiting further work under the contract.
Defendants BHA and Atlas have filed separate motions to dismiss this action. Defendants BHA and Atlas assert that since BHA rejected plaintiff's first bid award pursuant to its reservation of rights to do so, the plaintiff has no standing to challenge the first bid award. Defendants argue further that this same reasoning applies to the second bid awarded to Atlas; that is, that BHA exercised its right to CT Page 4953 reject Kendland's second bid. The defendants also posit plaintiff's absence of standing to challenge Atlas contract upon the absence of any contractual rights in the plaintiff and the distance between plaintiff and any zone of protectable interests.
II. THE MOTIONS TO DISMISS
"A motion to dismiss is the proper vehicle to assert the court's lack of jurisdiction over the defendant." American Laundry Machinery, Inc. v. State, 190 Conn. 212, 217 (1983). "The motion to dismiss shall be used to assert. . . lack of jurisdiction over the subject matter." Miller v. United Technologies, Inc., 40 Conn. Sup. 451, 453 (1986). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." Ardmare Construction Co. v. Freedman,191 Conn. 497, 501 (1983).
Where a party is found to lack standing, the court lacks subject matter jurisdiction. See, e.g., Christ-Janer v. A.F. Conte Co., 8 Conn. App. 83, 90 (1986). For the plaintiff's complaint to survive the defendant BHA's motion to dismiss, the court must find that a contractual relationship existed between the plaintiff and defendant BHA. As to defendant Atlas, the court must, in passing upon Atlas' motion to dismiss, address plaintiff's two purported grounds: (1) that the plaintiff's existing contract with the BHA gives it standing to challenge Atlas' contract, and (2) that the failure of Atlas' bid to conform to the regulations confers standing on Kendland as an unsuccessful bidder acting to protect the public interest. See, e.g., Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (1970).
1. DOES PLAINTIFF KENDLAND HAVE STANDING TO SUE BRIDGEPORT HOUSING AUTHORITY BASED ON A CONTRACT CREATED BY BHA'S CONDITIONAL ACCEPTANCE OF PLAINTIFF KENDLAND'S BID?
 Speaking generally, whether an action for breach of contract can be maintained depends on many factors. The most important one, as respects the present discussion, is whether a binding agreement between the bidder and the public body came into being at the time the award was made. Under general contract law, whether the parties to an information agreement become bound prior to the execution of a contemplated formal writing depends largely on CT Page 4954 their intention.
3 ALR3d 864, 867. Public Contract — Award — Revocation (citations omitted).
The cases which hold that no contract is formed by the award of the contract to the lowest responsible bidder tend to draw on statutory language for their support. See, e.g., Wayne Crouse, Inc. v. Braddock Borough School Dist., 341 Pa. 497,19 A.2d 843 (1941) (statutes which empowered school districts to contract clearly contemplated written documents to create contractual relationships); Schull Construction Co. v. Board of Regents, 79 S.D. 487, 113 N.W.2d 663, 664-65
(1962) (statute provided that "[a]ll contracts shall be made and set forth in writing. . ." so resolution of award was non-binding).
In at least one important case, the United States Supreme Court, notwithstanding a statutory requirement of a signed contract, held that an award of the contract was binding. In that case the contractor's willingness to sign the contract was held to be sufficient to prohibit revocation. United States v. Purcell Envelope Co., 249 U.S. 313
(1919).
More important for present purposes is the line of cases holding that in the absence of specific statutory language revocation. United States v. Purcell Envelope Co., 249 U.S. 313
(1919).
More important for present purposes is the line of cases holding that in the absence of specific statutory language requiring a written contract, the award of the contract creates legal rights and obligations. See, e.g., Stebel v. United States, 69 F. Sup. 221, 222 (Ct.Cl. 1947) (communication of acceptance — for example, the mailing of a letter of award — is the determining factor in creating the contract); City of Susanville v. Lee C. Hess, Co., 45 Cal.2d 684, 290 d.2d 520, 526 (1955); ("where the. . . administrative officer is required by statute to call for bids and must under competitive bidding conditions let the contract to the lowest responsible bidder, the making of the award gives rise to a contract between the public body or agent and the successful bidder"); McIntosh Road Materials Co. v. Woolworth, 365 Pa. 190, 74 A.2d 384 (1950) ("when an award has once been made the public body has no discretion but to execute the contract. The rights of the parties then become fixed, and the power to cancel the award or reject the bid does not exist"); see also, McQuillin on Municipal Corporations, 3d Ed., Vol. 10, section 29.71 (citation CT Page 4955 omitted):
 While it is true that a municipal corporation has discretion as to the time and manner of making corporate improvements and the purchase of supplies, still when this discretion has been exercised and a contract made relative to it, the legislative function has been exhausted, and the duty has become purely ministerial, and a contract so made cannot be impaired at the option of the municipality. Hence, when a bid has been accepted by the proper authorities, such acceptance cannot be revoked.
Connecticut courts do not appear to have directly addressed this issue. Examination of Conn. Gen. Stat. section 8-38, et. seq., discloses no mandatory language requiring written formal contracts; rather, at section 8-44
(c), the statute empowers the housing authority "to arrange or contract for the furnishing. . . of services, privileges, works or facilities. . . ." The provisions of Conn. Gen. Stat. section 4b-91, et. seq., are similarly mute on the subject of the requirement of a written document. The following language logically implies that Connecticut law contemplates that an acceptance of a bid creates a contract. "This court has declared that `[a] bid, even the lowest possible one, submitted in response to an invitation for bids is only an offer which, until accepted, does not give rise to a contract between the parties.'" Ardmare Construction Co. v. Freedman, 119 Conn. 497, 501 (1983) (quoting John J. Brennan Construction Corporation, Inc. v. Shelton, 187 Conn. 695,702.
The defendants rely on McQuillin on Municipal Corporations (3d Ed., Vol. 10, section 29.80) for the proposition that an award of acceptance by a municipal agency did not create a binding contract because the award for this proposition by McQuillin is Istari Construction, Inc. v. City of Muscatine, 330 N.W.2d 798 (1983); it must be pointed out that in that case, "[t]he statutory notice soliciting bids specified. . . that [the award] would not be binding unless approved [by HUD]." There is no such statutory notice in this case.
Defendant BHA has argued additionally that the mistake in the bid as to the scope of the work prevents the formation of the contract, since there was no mutual consent. It appears indisputable that the plaintiff Kendland evinced a willingness to go forward with the contract, notwithstanding any questions as to the scope of the work (testimony of CT Page 4956 Clarence Craig, at August 29, 1990 hearing). From this fact the court could infer that there was assent, and that the plaintiff has assented to the defendant BHA's interpretation of the specifications at that time. Authority for this finding may be drawn from Regional School District No. 4 v. United Pacific Ins. Co., 4 Conn. App. 175, 181 (1985) (where bidder is willing to complete the work for the lowest bid price, mistake is irrelevant unless agency has suffered some detriment). See also, State of Connecticut v. F. H. McGraw,41 F. Sup. 369 (D.Conn. 1941) ("[t]he act of bidding was an offer to do the work according to specifications. Thus the State accepted, completing the engagement represented by the bid bond"). Here, in distinction to Regional School District and McGraw, the contractor rather than the public agency is suing on the contract. Were the situation reversed, those two cases show that the BHA would have had standing to sue on the bid bond of Kendland. Conn. Gen. Stat. section 4b-94. "[T]he government must be held to the same general principles of equity and fair play in dealing with those who contract as are the contractors themselves." McGraw, 41 F. Supp. at 374.
However, not only is the situation not reversed, the BHA letter, dated November 29, 1989, awarding the contract to plaintiff Kendland contained a critical condition precedent: ". . . subject to the approval of the Department of Housing and Urban Development." Nowhere in the complaint does the plaintiff allege that this condition was met. Furthermore, no evidence has been presented which establishes that HUD granted such approval for the plaintiff's contract, nor is a stipulation to that effect contained in the Statement of Facts in the file.
 A condition. . . creates no right or duty in and of itself but is merely a limiting or modifying factor. 3 Corbin, Contracts, section 633. If the condition is not fulfilled, the right to enforce the contract does not come into existence.
Lach v. Cahill, 138 Conn. 418 at 421 (1951). See also, Christophersen v. Blount, 216 Conn. 509, 512
(1990). In addition, BHA reserved the right to reject all bids prior to the signing of the contract. See Instructions to Bidders, paragraph 9a.
From the foregoing the Court finds that the allegations in the First Count viewed in the context of the Stipulation of Facts and the exhibits introduced in evidence do not establish the existence of an enforceable contract between plaintiff Kendland and defendant BHA. Particularly noteworthy in this regard is the absence of any allegation or CT Page 4957 evidence of HUD's approval of such a contract. Furthermore, given the dollar size discrepancy between Kendland's and BHA's expectations of work included in Kendland's base bid, BHA could hardly be faulted in rejecting Kendland's bid.
For the foregoing reasons, the Court finds that since the contract alleged in the first count does not exist between the plaintiff and defendant BHA, the plaintiff lacks standing to seek any relief relative thereto.
2. DOES PLAINTIFF KENDLAND HAVE STANDING TO SUE DEFENDANT BRIDGEPORT HOUSING AUTHORITY AND DEFENDANT ATLAS/W.R. JOHNSON BASED EITHER UPON A PRE-EXISTING CONTRACT WITH DEFENDANT BRIDGEPORT HOUSING AUTHORITY OR ON GROUNDS OF PUBLIC POLICY?
It appears that the second count of the complaint is based on the so-called Spiniello doctrine, derived from Spiniello Construction Co. v. Manchester, 189 Conn. 539, 544
(1983). In that case the Connecticut Supreme Court stated that, though an unsuccessful bidder normally does not have standing to challenge the municipality's decision (see, e.g., Austin v. Housing Authority, 143 Conn. 338, 349 (1956)), exceptions are recognized "where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of the municipal officials." Spiniello, 189 Conn. at 544.
There are no allegations here that connote "fraud, corruption or favoritism", and no allegation that a disparity of information existed between the bidders in the second round of bids. See, e.g., Ardmare Construction Co. v. Freedman, 191 Conn. 497, 505-06 (1983) (where sole ground supporting standing is "undermining integrity of bidding process", it must be shown that successful bidder has more information than unsuccessful bidders). The plaintiff Kendland nonetheless argues that, under Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150
(1970), it need only satisfy a two-fold standing, to wit: that the award of the contract to Atlas "caused him injury in fact", 397 U.S. at 152, and that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected by the statute or constitutional guarantee in question." 397 U.S. at 153.
If the court accepts arguendo, that the award of the contract to Atlas caused Kendland actual harm, the plaintiff still must demonstrate that it meets the "zone of interest" standard above mentioned. The zone of interests protected by CT Page 4958 the competitive bidding statute (Conn. Gen. Stat. section 4b-91, et. seq.) is the right of the public to the lowest responsible bidder, absent fraud, corruption, favoritism or acts undermining the objectivity and integrity of the bidding process. Plaintiff has relied on an unreported district court decision to support its claim that the second-lowest bidder has standing where the lowest bidder is alleged to be in violation of bid regulations. The federal case cited by the plaintiff, Blakeslee Arpaia Chapman, Inc. v. City of New Haven, Civil No. N-83-497, U.S.D., D.Conn., October 27, 1983, (Burns, J.), differs from the instant case in a significant matter: the successful bidder in Blakeslees was alleged to have failed to comply with specific federal and city regulations (Memorandum of Decision, pp. 5-6) and its bid was therefore arguable unresponsive. The precise manner in which the bid failed to comply was the absence of the city-mandated minority and women enterprise certificates. . . . "[T]he local origin of the MBE/WBE certificate requirements does not change the fact that, once they are made a prerequisite to consideration of a bid, they are material "terms under [federal regulations]." (Memorandum of Decision, p. 8). By contrast, plaintiff Kendland here alleges (in paragraph 6 of the second count of the complaint) only that "the bid [of co-defendant Atlas] did not conform to the requirements [of the] invitation to bid in numerous respects." The specific instances of nonconformity are not enumerated. No violations of city ordinances or state statutes are cited. Such distinctions vitiate the plaintiff's claim that the Blakeslee decision supports its standing to sue Atlas. In summary, the plaintiff's claim of standing to sue Atlas cannot rest on any contractual rights vis-a-vis Atlas. See, e.g., Reynolds v. Owen, 34 Conn. Sup. 107,111 (1977) (no contractual rights absent privity).
The plaintiff does not qualify as a "private attorney general" to vindicate the public interest under the Spiniello doctrine as expanded in Ardmare Construction Co.," since the complaint does not contain any allegations of fraud, corruption, favoritism, nor any allegations of acts undermining the objectivity and integrity of the bidding process. Accordingly, the Court finds that the plaintiff lacks standing to maintain its claims in the second count of its complaint.
For the foregoing reasons this Court grants the defendants' motions to dismiss.
CLARANCE J. JONES JUDGE CT Page 4959