**In re SEAESCAPE CRUISES, LTD., Debtor.**

**SKANDINAVISKA–ENSKILDA BANKEN, Appellant,**

**v.**

**C.L.C. MARINE SERVICES, LTD., Appellee.**

**C.L.C. MARINE SERVICES, LTD., Appellant,**

**v.**

**SKANDINAVISKA–ENSKILDA BANKEN, Appellee.**

**SKANDINAVISKA–ENSKILDA BANKEN, Appellant,**

**v.**

**C.L.C. MARINE SERVICES, INC., Appellee.**

Nos. 94–0110–CIV, 94–0288–CIV, 94–0412–CIV and 91–11121–BKC–PGH.

United States District Court, S.D. Florida.

Sept. 30, 1994.

Robert A. Schatzman, Miami, FL, for SeaEscape Cruises, Ltd.

Andrea Fischer, Alan Heblack, Mark C. Flavin, Jon Yard Arnason, James H. Hohenstein, Haight, Gardner, Poor & Havens, New York City, Jay M. Gamberg, Law Offices of Jay M. Gamberg, P.A., Hollywood, FL, for Skandinaviska–Enskilda Banken.

Helena Marie Tetzeli, Steven M. Weinger, Kurzban Kurzban & Weinger, P.A., Miami, FL, for C.L.C. Marine Services, Ltd. in Nos. 94–0110–CIV, 94–0288–CIV.

J. Raul Cosio, Holland & Knight, Miami, FL, for C.L.C. Marine Services, Inc. in No. 94–0412–CIV.

Daniel Douglass, Fort Lauderdale, FL.

***ORDER AFFIRMING DECISIONS OF THE BANKRUPTCY COURT GRANTING MARITIME LIEN CLAIMS IN FAVOR OF C.L.C. MARINE SERVICES, INC. AND C.L.C. MARINE SERVICES, LTD.***

ARONOVITZ, District Judge.

This matter concerns three separate appeals in the Chapter 11 bankruptcy case ·of SeaEscape Cruises, Ltd. In the appeal designated as Case No. 94–0110–CIV–ARONOVITZ, Skandinaviska–Enskilda Banken ("SE Banken") appeals from the Findings of Fact and Conclusions of Law on Objections to Maritime Lien Claim of C.L.C. Marine Services, Ltd., entered on November 12, 1993 by Judge Paul G. Hyman, Jr. of the United

States Bankruptcy Court for the Southern District of Florida. In the appeal designated as Case No. 94–0412–CIV–ARONOVITZ, SE Banken appeals from the Findings of Fact and Conclusions of Law on Objections to Maritime Lien Claim of C.L.C. Marine Services, Inc., entered on December 14, 1993 by Judge Hyman. In the appeal designated as Case No. 94–0288–CIV–ARONOVITZ, C.L.C. Marine Services, Ltd. appeals from the Order Denying C.L.C. Marine Services, Ltd.'s Motion for Attorney's Fees, entered on January 13, 1994 by Judge Hyman.

The aforementioned appeals were consolidated for appellate review, and on September 9, 1994, the Court heard oral argument thereon.[1] The Court has considered the briefs on appeal, oral argument of counsel, the decisions of the bankruptcy court, the applicable law and the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons stated herein, this Court hereby AFFIRMS the decision of the bankruptcy court in each of the three above-captioned appeals.

## Factual and Procedural Background

This appeal stems from a dispute over the validity of the maritime lien claims of C.L.C. Marine Services, Inc. ("CLC Inc."), a Florida corporation with an office in Miami, Florida, and C.L.C. Marine Services, Ltd. ("CLC Ltd."), an English corporation with an office in Southampton, England, against the M/V Scandinavian Song (the "M/V Song" or the "Vessel").

## Renovations to the M/V Song

The Debtor, SeaEscape Cruises, Ltd. ("SeaEscape") was a Bahamian corporation that offered one-day cruises from Miami, Florida. Its fleet included the M/V Song, a vessel which it leased from the owner, Ferry Charter Limited of Florida, pursuant to a charter agreement between the parties. Paragraph 14 of the charter agreement contained a no lien clause that barred SeaEscape from permitting any liens to attach to the Vessel.

Shortly after SeaEscape retained possession of the M/V Song in 1990, it hired CLC Inc. to perform renovation and repair work on the Vessel. The preliminary terms of the deal were first memorialized in a Letter of Intent dated September 29, 1990. Paragraph 9 of the Letter of Intent contained the following waiver clause:

> Owner shall always retain full possession of the Vessel and materials, and CLC waives any right to prevent the Vessel from sailing, and waives any claim of lien against the Vessel.

The Letter of Intent further stated that "[a] formal contract incorporating these terms will be signed by October 5, 1990." It was signed by John Chillingworth, the Vice President of Technical and Marine Operations of SeaEscape and by Kenneth Engstrom, Director and General Manager of CLC Inc.

On October 4, 1990, CLC Inc. and SeaEscape entered into the "Refit Contract," the formal contract anticipated in the Letter of Intent. Article 28 of the Refit Contract provides in its entirety the following:

> Contractor waives any right it has or may have under this Contract or the law, or otherwise, *in rem* against Vessel for any

---

1. There are outstanding before the Court three additional appeals in the bankruptcy case of SeaEscape Cruises, Ltd.: *Skandinaviska–Enskilda Banken v. C.L.C. Marine Services, Ltd.,* Case No. 94–0413–CIV–ARONOVITZ; *Skandinaviska–Enskilda Banken v. C.L.C. Marine Services, Inc.,* Case No. 94–1383–CIV–ARONOVITZ; and *Maduro Travel, Inc. v. Skandinaviska–Enskilda Banken, et al.,* Case No. 94–0145–CIV–ARONOVITZ.

Case No. 94–0413–CIV–ARONOVITZ originally was consolidated with the cases at bar. The merits of that appeal, however, were not argued by counsel during the appellate hearing on September 9, 1994 and no decision on the merits thereof has been rendered by this Court. Thus, this opinion addresses only the merits of the three above-captioned appeals and does not pertain to Case No. 94–0413–CIV–ARONOVITZ. Case No. 94–0413–CIV–ARONOVITZ, however, may be related to Case No. 94–1383–CIV–ARONOVITZ, and the Court will undertake to see if consolidation can occur with respect thereto. The third remaining appeal, Case No. 94–0145–CIV–ARONOVITZ, does not appear to be related to the aforementioned appeals and is currently scheduled for oral argument on the merits before this Court on November 3, 1994.

claim arising under or in connection with this contract for purposes of obtaining security or jurisdiction with respect to any such claims; *provided* that should Contractor obtain a judgment against Owner and should that judgment remain unsatisfied or enforcement remain unstayed for thirty-one (31) days, Contractor shall have the right to arrest or attach Vessel so far as permitted by applicable law, for the purpose of enforcing the judgment.

The Refit Contract was signed by the President of SeaEscape and the President of CLC Inc. It identified SeaEscape as the "owner" of the M/V Song.

CLC Inc. subcontracted all or substantially all of the renovation and repair work to CLC Ltd.,[2] which CLC Ltd. performed and completed in Tampa, Florida between October 3, 1990 and November 20, 1990. A bill in the amount of $620,253.54 was submitted to SeaEscape for the value of the goods and services rendered to the M/V Song. SeaEscape declined payment.

*CLC Inc.'s and CLC Ltd.'s Claim to a Maritime Lien*

When SeaEscape failed to pay for the services rendered, CLC Inc. filed an action in Florida state court on March 8, 1991, seeking an *in personam* judgment against SeaEscape for the repair and renovation work performed to the M/V Song.[3] Ten days later on March 18, 1991, SeaEscape filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, which stayed the state court action pursuant to 11 U.S.C. § 362. CLC Inc. then filed two proofs of claim of a maritime lien in the bankruptcy case in the amount of $96,798.85 (claim # 1174) and $536,072.20 (claim # 1226). CLC Ltd. also filed a proof of claim of a maritime lien in the amount of $517,972.54 (claim # 1087).

At all relevant times, SE Banken (the Appellant herein) held a mortgage on the M/V Song. When the Vessel was transferred from SeaEscape during the course of the reorganization, SE Banken posted a letter of guaranty in favor of any holders of valid maritime liens which had priority over its mortgage on the M/V Song. Pursuant to a prior bankruptcy court order, SE Banken was given the right to contest maritime liens and to assert all claims and defenses of the Debtor SeaEscape. SE Banken filed objections to CLC Inc.'s and CLC Ltd.'s respective claims, contending that no privity existed between CLC Inc. and CLC Ltd., that CLC Inc. and CLC Ltd. failed to file documents adequate to preserve a maritime lien, and that CLC Inc. and CLC Ltd. failed to provide sufficient documentation to show that the services were actually performed. Subsequent thereto, SE Banken argued that CLC Inc. and CLC Ltd. had contractually waived their right to a maritime lien.

A trial on SE Banken's objections to CLC Inc.'s and CLC Ltd.'s proofs of claim was held before Judge Hyman in the United States Bankruptcy Court for the Southern District of Florida on November 1, 1993, primarily on the question of whether CLC Inc. and/or CLC Ltd. had waived their right to a maritime lien under Article 28 of the Refit Contract.

*The Bankruptcy Court's Decision*

At the trial, the court found that Article 28 was ambiguous and therefore, allowed the admission of parol evidence to determine the true intent of the parties with regard to Article 28. The bankruptcy court found that the parol evidence established, among other things, that prior to the execution of the Letter of Intent, CLC Inc. objected to the waiver language in paragraph 9 thereof and was advised by John Chillingworth of SeaEscape that SeaEscape did not desire for CLC Inc. to waive its right to a maritime lien and that the anticipated formal contract would reflect such intent. *See* Findings of Fact and

---

**2.** CLC Inc. and CLC Ltd. were both wholly-owned subsidiaries of CLC Group Limited.

**3.** The state court action was styled *CLC Marine Services, Inc. v. SeaEscape Ltd., d/b/a SeaEscape*

*Cruises, Ltd. and SeaEscape, Ltd.,* Case No. 91–10209 in the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida.

Conclusions of Law on Objection to Claim Filed By CLC Marine Services, Inc. at 5, ¶ 13 (Hyman, J.) (December 14, 1993) (hereinafter referred to as "Bankruptcy Court's December 14, 1993 Decision"). Based upon this representation from SeaEscape, CLC Inc. executed the Letter of Intent. *Id.* at 6, ¶ 14.

The parol evidence further showed that based upon a second reassurance from SeaEscape on October 1, 1990 that all SeaEscape required was for CLC Inc. to agree to conditionally postpone its right to enforce a maritime lien and that CLC Inc. was not required to waive its maritime lien, CLC Inc. commenced the renovation work on the M/V Song. *Id.* at 6–7, ¶¶ 16–17.

At the close of SE Banken's case-in-chief, CLC Ltd. moved for a directed judgment in its favor pursuant to Rule 52 of the Federal Rules of Civil Procedure.[4] The court permitted SE Banken to reopen its case and present additional evidence, after which it entered a directed verdict in favor of CLC Ltd. and against SE Banken. The trial then proceeded on the validity of CLC Inc.'s proofs of claim.

The bankruptcy court rendered two separate written decisions on the merits of the trial. On November 12, 1993, the court entered its Findings of Fact and Conclusions of Law on Objections to Maritime Lien Claim of C.L.C. Marine Services, Ltd., wherein it found that CLC Ltd. had a valid maritime lien in the amount of $517,970.54 for the work performed on the M/V Song. A directed verdict and subsequently, a Final Judgment was entered in favor of CLC Ltd. in the amount of $517,970.54. SE Banken ap-

peals and that appeal has been designated as Case No. 94–0110–CIV–ARONOVITZ.

On December 14, 1993, the bankruptcy court entered its Findings of Fact and Conclusions of Law on Objections with regard to CLC Inc.'s proofs of claim. In that decision, the court determined that Article 28 of the Refit Contract did not constitute a waiver by CLC Inc. of its maritime lien rights. It concluded that Article 28 merely created a condition precedent to CLC Inc.'s ability to enforce its maritime lien, namely, it must first obtain an *in personam* judgment within thirty-one days.[5] The court also relied on the testimony of the witnesses in finding that the parties did not intend a waiver at the time of contracting. It further concluded that to the extent that Article 28 can be read to mean what SE Banken claims, it is based on a mutual mistake of fact or fraudulent inducement on the part of SeaEscape as to the ownership of the M/V Song and thus, was subject to reform by the court so as to reflect the true intent of the parties. Accordingly, the court ruled that CLC Inc. had a valid and enforceable maritime lien in the amount of $620,253.54. Cognizant that it had previously awarded CLC Ltd. $517,940.54 and so as to avoid the possibility of a double recovery by CLC Inc., judgment was entered in CLC Inc.'s favor in the amount of $102,283. SE Banken appeals and that appeal has been designated as Case No. 94–0412–CIV–ARONOVITZ.

After the trial, CLC Ltd. moved for attorneys' fees and sanction pursuant to Bankruptcy Rule 9011, seeking an award of attorneys' fees in the minimum amount of $80,803.50 as part of the award of an appropriate sanction. The basis of that motion was SE

---

4. Rule 52 of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings by Bankruptcy Rule 7052.

5. Specifically, the trial court ruled that:
   Upon review of this Court of the language of Article 28, the Court finds that the plain reading of Article 28 of the Refit Contract deals strictly with CLC MARINE SERVICES, INC.'s right to enforce its maritime lien rights as opposed to its right to or entitlement to a maritime lien. The Court further finds that

Article 28 does not evidence a waiver or release by CLC MARINE SERVICES, INC. of its maritime lien encumbering the M/V SCANDINAVIAN SONG. Rather, Article 28 merely establishes or creates a condition precedent to CLC MARINE SERVICES, INC.'s ability to enforce its maritime lien, namely, it must first obtain an *in personam* judgment within thirty one (31) days.
Bankruptcy Court's December 14, 1993 Decision at 11.

Banken's filed objections to CLC Ltd.'s proof of claim, which, CLC Ltd. claims, were not well grounded in law or in fact and/or were filed for an improper purpose. Following a hearing thereon, the bankruptcy court entered an order, denying CLC Ltd.'s motion. CLC Ltd. appeals from that order, and that appeal has been designated as Case No. 94–0288–CIV–ARONOVITZ.

### Discussion

The Court has jurisdiction of these appeals pursuant to 28 U.S.C. § 158(a) (West 1993).

The dominant issue presented on appeal is whether the bankruptcy court erred in concluding that CLC Inc. and CLC Ltd. did not waive their right to a maritime lien under Article 28 of the Refit Contract. Other issues raised on appeal are: (1) whether the bankruptcy court erred in concluding that Article 28 of the Refit Contract was ambiguous so as to allow the admission of parol evidence; (2) whether the bankruptcy court erred in entering a directed verdict in favor of CLC Ltd.; (3) whether the bankruptcy court erred in excluding from the evidence correspondence from CLC Inc.'s then-counsel to SeaEscape under Rule 408 of the Federal Rules of Evidence; and (4) whether the bankruptcy court erred in denying CLC Ltd.'s motion for attorneys' fees against SE Banken.

In accordance with Federal Rule of Bankruptcy Procedure 8013, the Court will not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.,* 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the trial court are subject to review under an abuse of discretion standard, *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883 (11th Cir. 1990), and conclusions of law are subject to *de novo* review. *Chase & Sanborn Corp.,* 904 F.2d at 593; *In re Sublett,* 895 F.2d 1381 (11th Cir.1990). The Court will address the issues on appeal in accordance with these standards of review.

### A. THE EXISTENCE OF A MARITIME LIEN

■ The Court will begin its analysis with a brief discussion on maritime liens.

Pursuant to § 31342(a)(1) of the Federal Maritime Law Act, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel." *See* 46 U.S.C. § 31342(a)(1); *see also, Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1551 (11th Cir.1990) ("Congress has protected those who furnish supplies and other necessaries to vessels, granting such persons maritime liens against the vessel"). A charterer of a vessel is presumed to have the authority to procure necessaries for a vessel. *See* 46 U.S.C. § 31341(a)(4)(B); *see also, Marine Fuel Supply and Towing, Inc. v. M/V Ken Lucky,* 869 F.2d 473, 476 (9th Cir.1988); *Belcher Oil Co. v. M/V Gardenia,* 766 F.2d 1508, 1512 (11th Cir.1985). The maritime lien arises at the moment "when the goods or services are supplied or performed in the United States." *Gulf Trading & Transportation Co. v. The Vessel Hoegh Shield,* 658 F.2d 363, 367 (5th Cir.1981), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

■ Applying these well established principles of maritime law to the facts of this case, SeaEscape, as the charterer of the M/V Song, clearly has the authority to procure necessaries for the Vessel. It is undisputed that the goods and services rendered by CLC Inc. and CLC Ltd. to the Vessel were in fact "necessaries" within the meaning of 46 U.S.C. § 31342(a)(1). Therefore, the Court concludes that upon the rendering of said goods and services, CLC Inc. and CLC Ltd. obtained a valid and enforceable maritime lien against the M/V Song by operation of law.

### B. WHETHER CLC INC. OR CLC LTD. WAIVED THEIR RIGHT TO A MARITIME LIEN?

Having determined that CLC Inc. and CLC Ltd. did obtain a maritime lien against the M/V Song, the Court now decides the pivotal issue in this appeal: whether CLC Inc. or CLC Ltd. waived their maritime lien under Article 28 of the Refit Contract. SE Banken contends that because an *in rem*

action is the only means through which a maritime lien is recognized and enforced, CLC Inc. and CLC Ltd.'s waiver of their right to proceed *in rem* against the Vessel under Article 28 is equivalent to an absolute waiver of its maritime lien.[6] On the other hand, CLC Inc. and CLC Ltd. argue that Article 28 of the Refit Contract constituted only a conditional waiver of CLC Inc.'s right to *enforce* their maritime lien, but does not in any way waive, release or preclude their *entitlement* to a maritime lien.

■ While a maritime lien may be waived "by agreement or otherwise," *see* 46 U.S.C. § 31305, there is a "strong presumption" that one furnishing services or supplies to a vessel does not waive a maritime lien. *See Stevens Technical Services, Inc. v. United States*, 913 F.2d 1521, 1521 (11th Cir. 1990); *Vessel Hoegh Shield*, 658 F.2d at 368; *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1209 (5th Cir.1978).[7] The burden is placed on the proponent of a waiver to prove that a supplier of necessaries has waived its right to a maritime lien. This burden of proof has been characterized by the Eleventh Circuit as a "heavy burden."

> This circuit's cases construing the waiver provision ... place a heavy burden on the litigant attempting to prove that [a claimant] waived a lien by looking to someone other than the vessel owner for payment.

*Stevens*, 913 F.2d at 1537 (quoting *Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743, 750 (5th Cir.1985)).

> "[B]ecause of the strong presumptions in favor of a maritime lien ... it is neces-

sary" for one urging "such a waiver" to prove "that the creditor *deliberately intended*" to forego the valuable privilege of a maritime lien by looking solely to the personal credit of the party receiving the supplies, repairs, etc.

*Id.* at 1537 (quoting *Sasportes*, 581 F.2d at 1209) (emphasis in original). Thus, in this case, SE Banken bears the "heavy burden" of proving that CLC Inc. and CLC Ltd. deliberately intended to waive their maritime liens.

■ The trial court's determination that there is or is not a waiver of a maritime lien is subject to a "clearly erroneous" standard of review.[8] Based upon a careful review of the record, and for the reasons stated below, this Court concludes that the bankruptcy court was not clearly erroneous in finding that neither CLC Inc. nor CLC Ltd. had waived their maritime liens.

### 1. Article 28 of the Refit Contract

■ Article 28 of the Refit Contract provides in its entirety the following:

> Contractor waives any right it has or may have under this Contract or the law, or otherwise, *in rem* against Vessel for any claim arising under or in connection with this contract for purposes of obtaining security or jurisdiction with respect to any such claims; *provided* that should Contractor obtain a judgment against Owner and should that judgment remain unsatisfied or enforcement remain unstayed for thirty-one (31) days, Contractor shall have the right to arrest or attach Vessel so far as

---

**6.** It should be noted that CLC Inc., and not CLC Ltd., was the contracting party to the Refit Contract. Nonetheless, SE Banken argues that CLC Ltd. is bound by that contract under the theories of imputed knowledge, privity and/or agency. Because the Court finds that CLC Inc. did not absolutely waive its right to a maritime lien under Article 28 of the Refit Contract, *see infra*, SE Banken's argument of an alleged waiver by CLC Ltd. based on the actions and knowledge of CLC Inc. is moot and need not be addressed herein.

**7.** The Court of Appeals for the Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206,

1207 (11th Cir.1981), adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**8.** *See, e.g., Farrell Ocean Services, Inc. v. United States*, 681 F.2d 91, 93 (1st Cir.1982) (district court's finding that appellant had waived its lien is reversible only if clearly erroneous); *Bermuda Express, N.V. v. M/V Litsa*, 872 F.2d 554, 562, n. 7 (3d Cir.) (same), *cert. denied sub nom., M/V Litsa v. Southeastern Maritime Co.*, 493 U.S. 819, 110 S.Ct. 73, 107 L.Ed.2d 40 (1989).

**1010**

permitted by applicable law, for the purpose of enforcing the judgment.

The trial court's determination that this provision is ambiguous is subject to *de novo* review, since the question of whether a contract provision is ambiguous is a conclusion of law. *See Barclays American Mortgage Corp. v. Bank of Central Florida,* 629 So.2d 978, 979 (Fla. 5th DCA 1993) ("the determination of whether or not a contract provision is ambiguous ... is a matter of law for the judge"); *Sproles v. American States Insurance Co.,* 578 So.2d 482, 484 (Fla. 5th DCA 1991) (same).

■ An ambiguity exists "when a word or phrase in a contract is of uncertain meaning and may be fairly understood in more ways than one and is susceptible of more than one meaning and of interpretation in opposite ways." *Rey v. Guy Gannett Publishing Co.,* 766 F.Supp. 1142, 1146 (S.D.Fla.1991). Having carefully reviewed Article 28 of the Refit Contract *de novo,* the Court finds that that provision is not ambiguous.

■ It appears to this Court that a plain reading of Article 28 as a whole reveals that it is a conditional waiver of CLC Inc.'s right to *enforce* its maritime lien. Article 28 states that "Contractor [CLC Inc.] waives any right it has or may have under this Contract or the law, or otherwise, *in rem* against Vessel for any claim arising under or in connection with this contract for purposes of obtaining security or jurisdiction with respect to any such claims." This provision does not constitute an outright, absolute waiver of CLC Inc.'s rights for any and all purposes whatsoever. Rather, the waiver is limited only "for purposes of obtaining security or jurisdiction." There is absolutely no language to the effect that CLC Inc. agreed to forfeit its right to obtain a maritime lien against the Vessel.

■ In addition, the limited waiver is subject to a condition precedent. Article 28 states that there is waiver for purposes of obtaining security and jurisdiction, *"provided* that should Contractor obtain a judgment against the Owner and should that judgment

remain unsatisfied or enforcement remain unstayed for thirty-one (31) days, Contractor shall have the right to arrest or attach Vessel so far as permitted by applicable law, for the purpose of enforcing the judgment." The plain meaning of this "provided" clause is that CLC Inc. may arrest or attach the M/V Song (i.e., enforce its maritime lien) if it first obtains an *in personam* judgment that remains unsatisfied for thirty-one (31) days.

Read in its totality, Article 28 of the Refit Contract clearly created a conditional waiver of CLC Inc.'s right to enforce its maritime lien, conditioned on it first obtaining an *in personam* judgment. CLC Inc. attempted to satisfy the condition precedent by seeking an *in personam* judgment against SeaEscape in the state court action but that action was stayed by SeaEscape's bankruptcy filing. The Court further finds that Article 28 does not in any way waive, release, surrender or preclude the *existence* of a maritime lien in favor of CLC Inc. CLC Inc. simply agreed to conditionally postpone its enforcement rights.

■ SE Banken argues that by waiving its right to proceed *in rem* against the Vessel under Article 28, CLC Inc. waived its right to a maritime lien completely. This argument appears to be premised on the proposition that an *in rem* right is synonymous with the right to a maritime lien. SE Banken relies on the following passage from a well recognized treatise on admiralty and maritime law in support of its contention.

In American jurisprudence the existence of a maritime lien is synonymous with the availability of a libel *in rem.* As Justice Field wrote in *The Rock Island Bridge* [, 6 Wall. 213, 73 U.S. 213, 18 L.Ed. 753 (1867) ]: "The lien and the proceeding *in rem* are, therefore, correlative—where one exists, the other can be taken, and not otherwise."

Gilmore & Black, *The Law of Admiralty* at 622 (2d ed. 1975).

■ The Court does not read this passage as stating that if there is not a right to an *in rem* proceeding, then a lien does not exist. Rather, the Court interprets Gilmore & Black to mean that where one has a mari-

time lien, then an *in rem* proceeding may be taken to enforce it. The Court's position is buttressed by the well settled principle that the *in rem* proceeding "is simply a means of enforcing the property right." 2 *Benedict on Admiralty*, § 22 (6th ed. 1993); *see also, Amstar Corporation v. S/S Alexandros T*, 664 F.2d 904, 908 (4th Cir.1981) (the purpose of an *in rem* proceeding "has always been to provide a means for enforcing a maritime lien, which is the central element of an *in rem* proceeding"); *State of California Department of Fish and Game v. S.S. Bournemouth*, 307 F.Supp. 922, 927 (C.D.Cal.1969) (the *in rem* proceeding "is the remedy afforded for the enforcement of liens"). Simply because CLC Inc. conditionally waived its right to enforce its maritime lien through an *in rem* proceeding does not mean that it waived its right to the lien. Therefore, SE Banken's interpretation of Article 28 is rejected.

■ Based upon the foregoing, the Court finds that the bankruptcy court was not

clearly erroneous in concluding that under Article 28 of the Refit Contract, CLC Inc. only conditionally waived its right to enforce its valid maritime lien against the M/V Song and that CLC Inc. did not waive its entitlement to a maritime lien. This ruling from the Court renders moot SE Banken's argument that CLC Ltd. waived its maritime lien under Article 28 under the theories of privity, imputed knowledge or agency.[9] It follows from the Court's interpretation of Article 28 that CLC Ltd. also did not waive its right to a maritime lien thereunder.

■ Therefore, the bankruptcy court's decisions that neither CLC Inc. nor CLC Ltd. waived their right to a maritime lien for necessaries provided to the M/V Song should be affirmed.[10]

### 2. *Propriety of the Directed Verdict in Favor of CLC Ltd.*

The bankruptcy court's granting of CLC Ltd.'s motion for a directed verdict is subject

9. SE Banken has a second arrow in its bow as to CLC Ltd. It argues that CLC Ltd., as a subcontractor, waived its maritime lien under Article 20(b) of the Refit Contract, which provides that the "Contractor" (i.e., CLC Inc.) "shall require each subcontractor and each other supplier of materials and tools to irrevocably waive in writing any claim or lien" against the M/V Song. There, however, is absolutely no evidence in the record that CLC Ltd. signed such a written waiver.

10. As an aside, there are two other documents upon which a waiver may possibly be based: (1) the bareboat charter agreement and (2) the Letter of Intent between CLC Inc. and SeaEscape. Neither supports a finding of a waiver.

Paragraph 14 of the bareboat charter agreement clearly prohibits the attachment of any lien on the M/V Song. Neither CLC Inc. nor CLC Ltd. was a party to the charter agreement and the evidence showed that neither had knowledge of the agreement prior to the time of its performance. The charter agreement therefore cannot be the basis of a waiver.

CLC Inc. was a party to the Letter of Intent, paragraph 9 of which clearly provides for a waiver of a lien. The Letter of Intent, however, also contemplated that "[a] formal contract incorporating these terms will be signed" by a specified date. The general rule in Florida is that where parties intend a negotiation to be reduced to a formal writing, there is no binding contract until the formal writing is achieved. *Housing Authori-*

*ty of City of Fort Pierce v. Foster*, 237 So.2d 569 (Fla. 4th DCA 1970). This rule applies only where the parties do not intend to be bound by the negotiations until the formal contract is executed. *Id.* However, if the parties so intend, a contract is binding from the time it is made even though the parties also agree that the formal embodiment of its provisions will subsequently be prepared. *See Eastern Air Lines, Inc. v. Mobil Oil Corp.*, 564 F.Supp. 1131, 1145 (S.D.Fla. 1983), *affirmed*, 735 F.2d 1379 (11th Cir.1989).

The trial court made no specific findings of fact with regard to whether the parties intended to be bound by the Letter of Intent. However, the testimony of CLC Inc.'s and SeaEscape's witnesses establish that the Letter of Intent was merely an agreement to agree, that CLC Inc. repeatedly objected to the waiver language in paragraph 9, and that the parties had agreed to change said language in the subsequent document to reflect the parties' understanding that there would be no waiver. This constitutes significant evidence that the parties did not intend to be bound by paragraph 9 of the Letter of Intent. In addition, the explicit waiver language in paragraph 9 of the Letter of Intent does not appear in the Refit Contract, which is indicative of the parties' subsequent understanding. Moreover, the Letter of Intent was superseded by the Refit Contract pursuant to the standard merger/integration clause in Article 27 of the Refit Contract. Thus, based upon the evidence, it does not appear that the Letter of Intent can be the basis of a waiver.

to *de novo* review. *Sherrin v. Northwestern Nat'l Life Insurance Co.,* 2 F.3d 373, 376 (11th Cir.1993); *Hasenfus v. Secord,* 962 F.2d 1556, 1559 (11th Cir.1992). The trial court should grant a motion for directed verdict if "the facts and inferences point overwhelmingly in favor of one party such that reasonable people could not arrive at a contrary verdict." *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). The court must consider "all the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* at 581. This Court may not affirm the trial court's entry of a directed verdict if the record contains "substantial evidence" opposing the motion. *Id.* "A mere scintilla of evidence," however, is not sufficient to defeat the motion. *Id.; see also Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

■ SE Banken contends that there was substantial evidence that CLC Ltd. had knowledge of the waiver, which allegedly was imputed to CLC Ltd. by virtue of its relationship to CLC Inc. The Court disagrees.

The record reveals that SE Banken presented only one witness in its case-in-chief, SeaEscape's in-house counsel Mel Lamelas. Mr. Lamelas testified that he advised Mr. Childerstone (president of CLC Inc. and managing director of CLC Ltd.) of the charter agreement and the no-lien provision contained therein before the execution of the Refit Contract but after CLC Ltd. had commenced work on the Vessel. *See* Trial Tr. at 46. This testimony, however, does not constitute "substantial evidence" that CLC Ltd. knew about the no-lien provision in the charter agreement. In fact, other evidence presented in SE Banken's case-in-chief overwhelmingly established otherwise. The evidence showed that Mr. Lamelas never advised CLC in writing of the existence of the charter agreement, *see* Trial Tr. at 47, nor did he ever ask CLC Ltd. to sign a written waiver, *see* Trial Tr. at 59, nor was there notice posted on the M/V Song indicating that it was subject to a charter party agree-

ment or to a no-lien clause. *See* Trial Tr. at 57.

After CLC Ltd. moved for a directed verdict but before it ruled, the bankruptcy permitted SE Banken to reopen its case, *see* Trial Tr. at 67–71, to present the testimony of Mr. Childerstone in support of SE Banken's theory that CLC Ltd. should be bound by the acts and knowledge of CLC Inc. The testimony of Mr. Childerstone essentially showed that CLC Inc. and CLC Ltd. shared common officers and personnel who were involved in the deal with SeaEscape.

Following the testimony of Mr. Childerstone, the bankruptcy court granted CLC Ltd.'s motion for a directed verdict, finding that it was clear that CLC Ltd. performed services, for which the quality and amount due were undisputed, that there was "absolutely no evidence" that CLC Ltd. waived its liens in writing, and that there was no evidence that CLC Ltd. had knowledge of the no-lien provision in the bareboat charter agreement prior to providing services. *See* Trial Tr. at 91–92.

Having reviewed the entire transcript of the trial and the evidence adduced during the trial, this Court finds that even after reopening its case, SE Banken failed to present "substantial evidence" showing that CLC Ltd. had waived its right to a maritime lien. Therefore, the directed verdict was proper and should be affirmed.

3. *The Exclusion of Correspondence Under Federal Rule of Evidence 408*

■ At the trial, SE Banken offered into evidence a February 15, 1991 letter from Blackwell & Walker (then counsel to CLC Inc.) to Mr. MacGarvey, then president of SeaEscape, along with an attached proposed Modification Agreement drafted by Blackwell & Walker, as evidence of the parties' understanding that Article 28 of the Refit Contract constituted a waiver of CLC Inc.'s right to a maritime lien. The letter stated that the Refit Contract contains "an extremely inequitable provision which purports to waive the

lien rights of [CLC Inc.] in connection therewith." It proposed that "[t]he lien rights of C.L.C. with respect to the work performed on the Scandinavian Song be reinstated." The proposed attached Modification Agreement provided: "WHEREAS, said contract provided for a waiver by CLC of its rights to proceed in rem against the vessel ..."

The bankruptcy court declined to admit the Blackwell & Walker letter into evidence, holding that it was an offer to compromise a claim and thus, inadmissible pursuant to Fed. R.Evid. 408.[11] On appeal, SE Banken argues that the letter was admissible on a variety of grounds, such as (1) it was a demand letter and not an offer to compromise a disputed claim; (2) it was an admission by CLC Inc. that its claim of a maritime lien was invalid; (3) to impeach the testimony on CLC Inc.'s witnesses; and (4) to establish CLC Inc.'s understanding that Article 28 constituted a waiver.

■ The Court has reviewed the letter and attachment at issue. While it is arguable that the letter was not an offer to compromise under Rule 408, the Court is mindful that generally a trial court's decision on the admissibility of evidence is "afforded considerable deference," *Blu–J, Inc. v. Kemper C.P.A. Group,* 916 F.2d 637, 641 (11th Cir. 1990), and should be reversed only upon the finding that the trial court abused its discretion. *Perry v. State Farm Fire & Casualty Co.,* 734 F.2d 1441, 1446 (11th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). It does not appear to this Court that the bankruptcy court abused its discretion in finding that the letter, which threatened the filing of a law suit, was an attempt by CLC Inc. to resolve the dispute regarding its claim to full payment and was excludable under Fed.R.Evid. 408.

■ Even assuming *arguendo* that the bankruptcy court erred in excluding the let-

ter and the attachment from evidence, such exclusion does not rise to the level of prejudicial error and would not materially affect today's decision of this Court on the merits of the substantive issues in this case.

## C. AN AWARD OF SANCTIONS AND ATTORNEYS' FEES UNDER BANKRUPTCY RULE 9011

■ Pursuant to Bankruptcy Rule 9011 and the court's inherent powers, CLC Ltd. filed a motion for an award of attorneys' fees in the minimum amount of $80,803.50 as part of the sanctions it sought against SE Banken. The basis for this motion was SE Banken's objections to CLC Ltd.'s proof of claim, which, CLC Ltd. claims, were not well grounded in fact or law, or were filed for an improper purpose. Following a hearing on CLC Ltd.'s motion, the bankruptcy court entered on January 13, 1994 the Order Denying C.L.C. Marine Services, Ltd.'s Motion for Attorney's Fees. CLC Ltd. appeals.

■ The trial court's denial of Rule 9011 sanctions is reviewed for an abuse of discretion. *See In re Grantham Brothers,* 922 F.2d 1438, 1441 (9th Cir.1991); *Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 181 (10th Cir.1991). A trial court abuses its discretion where its ruling is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). Based upon a review of the record, including the transcript of the hearing on CLC Ltd.'s motion for attorneys' fees, the Court finds that the bankruptcy court did not abuse its discretion in declining to award sanctions and/or attorneys' fees under Bankruptcy Rule 9011.

Bankruptcy Rule 9011 requires that every paper filed in a bankruptcy case be signed by

11. Rule 408 provides, in pertinent part, that: Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.
Fed.R.Evid. 408.

at least one attorney and that said signature constitutes a certificate that, among other things,

> to the best of the attorney's ... knowledge, information, and belief formed after reasonable inquiry it [the filed document] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

Fed.R.Bankr.P. 9011. The rule provides for the imposition of an appropriate sanction, including attorneys' fees, in the event the Rule is violated:

> If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

*Id.*

The question of whether a party has violated Bankruptcy Rule 9011 is left to the sound discretion of the trial judge. *See In re Brown,* 152 B.R. 563, 567 (Bankr. E.D.Ark.1993). Once the court determines that Rule 9011 has been violated, the imposition of sanctions is mandatory. *See In re Zaragosa Properties, Inc.,* 156 B.R. 310, 313 (Bankr.M.D.Fla.1993) ("If the Rule is violated, there is no question that the imposition of sanctions is mandated by Rule 9011"); *In re McAllister,* 123 B.R. 393, 395 (Bankr.D.Or. 1991) (once the court determines that Rule 9011 has been violated, "sanctions must be imposed"). The bankruptcy court, however, has wide discretion in determining the appropriate sanction for a Rule 9011 violation. *Brown,* 152 B.R. at 567; *McAllister,* 123 B.R. at 395.

On appeal, CLC Ltd. argues that because the bankruptcy court in this case accepted as true all of the arguments of its counsel at the hearing on its motion, the court had found that SE Banken had violated Rule 9011 and thus, had no choice but to impose sanctions against SE Banken under Rule 9011. Counsel had argued to the bankruptcy court that SE Banken failed to conduct an adequate pre-filing inquiry, that SE Banken's position regarding whether privity did or did not exist between CLC Inc. and CLC Ltd. changed during trial, and that SE Banken made blanket objections to every claim filed against it. This conduct, CLC Ltd.'s counsel argued, demonstrates that SE Banken's objections lacked legal and factual basis, in violation of Bankruptcy Rule 9011.

CLC Ltd.'s appellate argument is based on a single statement made by the bankruptcy court at the conclusion of oral argument on CLC Ltd.'s motion for attorneys' fees. The court stated that "I'm going [sic] accept the proffer that there was all of the things that you've [CLC Ltd.'s counsel] alleged." *See* Attorneys' Fee Hearing Tr. at 43. It, however, immediately continued as follows:

> Even having said that, I think what I need to do is look at this particular case and the conduct of the counsel in this particular case and the clients, the positions the parties took in this particular case. And having seen that, reviewed the file, been intimately involved in the case, I will deny the motion for sanctions.

*Id.* It is clear to this Court that the bankruptcy court did not, as CLC Ltd. contends, find that SE Banken had violated Rule 9011 in this case. Rather, it appears that the court effectively found that SE Banken had *not* violated that rule, a decision that was well within the trial court's discretion. There is no evidence in the record that the bankruptcy court's holding constituted an abuse of discretion and accordingly, the denial of Rule 9011 sanctions against SE Banken, including an award of attorneys' fees, should be affirmed.

### Conclusion

Based upon the foregoing, the Court finds that CLC Inc. and CLC Ltd. obtained valid

maritime liens against the M/V Song by virtue of the necessaries they provided to the Vessel, and that neither waived in any manner their right to the maritime liens under Article 28 of the Refit Contract. Accordingly, the Court hereby AFFIRMS the United States Bankruptcy Court for the Southern District of Florida's judgment of a maritime lien in favor of CLC Ltd. in the amount of $517,940.54 and the judgment of a maritime lien in favor of CLC. Inc. in the amount of $102,283.00.

Thus, the Bankruptcy Court's (i) Findings of Fact and Conclusions of Law on Objections to Maritime Lien Claim of C.L.C. Marine Services, Ltd., entered on November 12, 1993; (ii) Findings of Fact and Conclusions of Law on Objections to Maritime Lien Claim of C.L.C. Marine Services, Inc., entered on December 14, 1993; and (iii) Order Denying C.L.C. Marine Services, Ltd.'s Motion for Attorneys' Fees, entered on January 13, 1994 are hereby AFFIRMED.

DONE AND ORDERED.