**In re CONCORDE NOPAL AGENCY, INC., Concorde Caribe Lines, Ltd., Debtors.**

**Albert TOGUT, as Chapter 7 Trustee for Concorde Nopal Agency, Inc. and Concorde Caribe Lines, Ltd. Plaintiffs,**

v.

**SUN BANK/MIAMI, N.A., Defendant.**

Bankruptcy Nos. 86–B–10823[TLB], 86–B–10238[TLB].

Adv. Nos. 88–0393–BKC–TCB–A, 88–5278A S.D.N.Y.

United States Bankruptcy Court, S.D. Florida.

Oct. 28, 1988.

Togut, Segal & Segal, New York City, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Harold D. Moorefield, Jr., Miami, Fla., for plaintiffs.

Attorneys for Defendant Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., William R. Clayton, Miami, Fla., for Sun Bank/Miami, N.A.

Order Denying Rule 11 Sanctions

THOMAS C. BRITTON, Chief Judge.

Defendant's motion (CP 20) under B.R. 9011(a), which makes Rule 11, Fed.R.Civ.P. applicable to pleadings and other papers filed in bankruptcy, seeks sanctions against the plaintiff chapter 7 trustee, the bankruptcy estates, and the trustee's New York attorneys, a law firm with which he is associated, and the attorney of that firm who signed the complaint.[1] His signature is illegible, but he has been identified as the trustee Togut. Plaintiff has moved (CP 27) to strike the motion and has also responded by memorandum (CP 28). The motions were heard September 26. Movant's oral argument is transcribed. (CP 29).

### Respondent's Motion to Strike

After defendant moved for sanctions, plaintiff noticed defendant's counsel and officers for depositions and sought the production of specified documents which might show the expense incurred by defendant in defending this action. Some of the later were not produced. Plaintiff asks that the motion for sanctions be stricken on that account.

The Advisory Committee Note states that with respect to a motion under Rule 11:

> "discovery should be conducted only by leave of court, and then only in extraordinary circumstances." *Quoted with approval in Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir.1987) (en banc).

Leave of court was neither sought nor granted. The motion to strike is denied.

---

1. There is no authority under Rule 11 to assess sanctions against either bankruptcy estate. The client of the signing attorney was the trustee, not the estates.

The denial of defendant's motion moots any inquiry into the amount of sanctions.

### The Motion for Sanctions

The ground for the motion is that: "plaintiff's New York counsel failed to make a *reasonable inquiry* prior to the commencement of this litigation as to whether the *complaint* was well grounded in fact ... when even minimal informal investigation would have readily and conclusively disproved the factual predicate for plaintiff's claims." (Emphasis added).

### The Complaint

The complaint seeks avoidance and recovery from the defendant bank of prepetition transfers by the debtor Nopal totalling $626,771 as (1) preferences to an "insider" under 11 U.S.C. § 547(b); (2) actually fraudulent under § 548(a)(1); (3) constructively fraudulent under § 548(a)(2); and (4) of additional preferences to an "insider" under § 547(b) totalling $1 million.

The complaint was filed in New York on March 16, 1988 in connection with the bankruptcies of two related companies pending in the Southern District of New York. This adversary proceeding was transferred here August 5.

When called for trial on September 1, plaintiff through Florida counsel moved for voluntary dismissal. He had notified defendant August 30 of his decision to voluntarily dismiss the complaint. The motion was granted, this court retaining jurisdiction only to tax costs and to consider a motion for sanctions. (CP 19).

At trial, plaintiff could have proved some preferential transfers within 90 days before bankruptcy, but defendant could prove a statutory affirmative defense under § 547(c)(1),[2] that the transfers were intended to be contemporaneous exchanges for new value.

At trial, plaintiff arguably could have proved constructive fraud, but he could not prove the absence of a "reasonably equivalent exchange" for the debtor's transfers, a necessary element to this cause of action.

Plaintiff could not prove his second count charging actual fraud.

Defendant employed two law firms and claims to have incurred expenses of $40,000 in defending this lawsuit, of which it says: "There [were] absolutely no grounds in fact to support any of the essential allegations" and "there was not one shred of evidence in support of any of the disputed allegations of fact". (CP 20).

Unless the professional judgment of defendant's attorneys was clouded by avarice, they either found the search for the pertinent facts from their own clients extraordinarily elusive, or the action had significant merit. It is hard to conclude that a lawsuit is frivolous when it takes two law firms and $40,000 to prepare a defense.

■ The lawsuit was not frivolous.[3] It was the existence of an affirmative defense that ultimately doomed it. A plaintiff is not required by Rule 11 to determine at his peril, before he files suit, that there is no affirmative defense available to the defendant. Only the inclusion of the second count, which alleged actual fraud, requires explanation or justification.

### The Investigation

■ Plaintiff's excuse for launching this vessel that sank before the trial began is three-fold: (1) he relied upon information and documents furnished by counsel for the debtors' largest creditor, another bank; (2) defendant was uncooperative in providing records; and (3) he faced the statute of limitations in § 546(a)(1).

---

**2.** *In re Ozark Restaurant Equipment Co., Inc.,* 77 B.R. 686, 696 (W.D.Ark.1987) (defenses under § 547(c) are affirmative defenses, waived if not asserted, that defendant has the burden to prove).

**3.** The purpose of the 1983 amendment to Rule 11, as the Advisory Committee Note makes clear, is to provide a "deterrent ... in dealing with improper pleadings, motions or other papers", not to reverse the American Rule by forcing the losing party to pay the victor's litigation expenses. The Rule targets only *"frivolous claims"*.

Only the plaintiff/trustee had standing to bring this action. Reputable counsel for the largest creditor, Ensign Bank, claimed to have investigated the matter and requested its filing. The details and records he furnished showed unusual and unexplained activity in the accounts of the debtor Nopal with defendant during the year before bankruptcy. This activity included over 80 overdrafts totalling almost $1 million, payment to defendant of $626,771 a month before the Caribe bankruptcy and four months before the Nopal bankruptcy, and diversion by the debtor and the defendant of substantial business receipts from the lock box account required by Ensign's loan agreement to payment of defendant's overdrafts. The accounts were maintained in a branch bank more distant from the debtors than several other branches. The son of the manager of that branch was employed by the debtor. When the trustee requested records of all transactions between the bank and the debtor, the defendant refused on the ground of expense and the confidentiality of its records.

The records and the circumstances strongly suggested payments made with an actual intent to hinder, delay or defraud the creditor Ensign Bank, and justified the assertion of count 2.

The trustee sought no information from the debtors because this was an involuntary bankruptcy and the trustee had already sued several of the debtors' officers for the recovery of preferences.

The squabble between the trustee and the defendant bank was brought to me on February 1, 1988 by the bank's motion for a protective order in response to the trustee's subpoena in connection with a B.R. 2004 examination authorized by the New York court. To me, the trustee appeared arrogant and the bank unduly intransigent, but each had a point. I permitted the production of the records on condition that

the trustee bear the reasonable expense, and suggested, alternatively, that the trustee be permitted to see the records, under the bank's supervision.

The parties failed to cooperate, could not even agree on the Order, and several days before this action was filed, March 14, moved for reconsideration. On March 28, the motion for reconsideration was resolved in this court, both parties abiding by the order.

Defendant argues that the trustee needed to see only a small fraction of the documents he originally requested. I agree. It also argues that the trustee could have found these records among the debtors' papers removed and retained by Ensign. If that was the case, it was not unreasonable for the trustee to rely on Ensign and its bank to search those records.

The suit was filed before completion of this attempted discovery, because plaintiff thought the two-year statute of limitations, § 546(a)(1), expired March 16. That would have been true if this were an action on behalf of the debtor Caribe, but this action involved assets of the debtor Nopal and the statute did not expire until August.

In assessing the reasonableness of an attorney's investigation, the Advisory Committee note explicitly permits consideration whether the attorney:

"had to rely on a client for information as to the facts underlying the pleading ... [and] whether he depended on ... another member of the bar."

The relationship between a bankruptcy trustee and the creditors he serves is analogous to that between attorney and client. This trustee was not unreasonable in relying upon the information furnished by Ensign Bank and the judgment of its counsel.[4]

I do not find that the trustee had any improper purpose to harass, cause delay, or to increase cost by instituting this action.

---

**4.** In *Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 558 (9th Cir.1986) (Rule 11 sanction imposed), the court said:
"We agree that reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry. *See* Fed.R.Civ.P. 11 advisory committee note. In

relying on another lawyer, however, counsel must 'acquire [ ] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact'".
As the foregoing indicates, I find that counsel got enough facts from the attorney for Ensign Bank to justify the filing of this complaint.

Though Mr. Togut, as counsel, was dilatory in pursuing the investigation of this claim, was unreasonable and abrasive in requesting documents from defendant, and was negligent in confusing the applicable bar date, I cannot say that the investigation which preceded the filing of this complaint, including count 2, was so unreasonably inadequate as to require the deterrent of sanctions.

Bankruptcy trustees and their counsel are generally overworked and underfinanced. As a consequence, they seldom pursue anything other than easily proved and obviously voidable transfers. They should do much more, and they should not be discouraged by the threat of sanctions when they fail.

Though Mr. Togut has obviously exceeded defendant's tolerance and has stretched mine, the motion for sanctions is denied against him as the one who signed the complaint. It follows necessarily that there is no basis for sanctions against those for whom he signed, his law firm and himself as trustee.

DONE and ORDERED.