In The Matter of LEEDS BUILDING
PRODUCTS, INC., Debtor.

LEEDS BUILDING PRODUCTS,
INC., Plaintiff,

v.

MOORE–HANDLEY, INC., Defendant.

Bankruptcy No. A91–81896–WHD.
Adv. No. 93–6826A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 9, 1995.

David B. Kurzweil, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for debtor/plaintiff.

William L. Kidd, William L. Kidd, P.C., Duluth, GA, for defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion for Sanctions filed on December 27, 1994, by the defendant Moore–Handley, Inc. (hereinafter "Moore–Handley"). Moore–Handley's Motion arises in an adversary proceeding commenced by the debtor Leeds Building Products, Inc., (hereinafter "Leeds") against Moore–Handley to recover allegedly preferential transfers. As such, the matters involved herein are part of a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(F). By its Motion, Moore–Handley requests that this Court impose sanctions upon Leeds and its counsel pursuant to FED.R.BANKR.P. 9011 for the wrongful filing and prosecution of this action. Both parties have briefed the pertinent issues and a hearing was conducted on March 1, 1995. After careful consideration of the applicable law and the arguments as presented, the Court will deny the Motion for the reasons set forth below.

### FACTUAL BACKGROUND

Beginning in August of 1990, the parties to this adversary proceeding entered into a commercial relationship. During that time, Moore–Handley was engaged in the business of distributing wholesale hardware goods, with Leeds as one of its customers purchasing hardware and building materials on an open account. According to an agreement between the two parties, payments from Leeds for its purchases were due either thirty days after the date of the invoice or on the tenth day of the month following the date of the invoice. During the course of their relationship, Moore–Handley received 176 checks from Leeds for payment of over 800 invoices. This business relationship ended, however, on November 22, 1991, when Leeds filed a voluntary petition in this Court for protection under Chapter 11 of the Bankruptcy Code.

Leeds' Chapter 11 plan of reorganization was confirmed by this Court on December 8, 1992. According to the provisions of the plan, Leeds was charged with the prosecution and collection of all preference actions. Even prior to plan confirmation, however, Leeds conducted an internal review of its records to identify possible preference claims. As a result of this review, Leeds sent approximately 60 demand letters, including one to Moore–Handley dated August 4, 1992, seeking return of allegedly preferential transfers. Utilizing its legal counsel, Moore–Handley responded to Leeds' demand letter by claiming all transfers in question were not recoverable as they were made in the ordinary course of business and were in exchange for new value. Almost a year passed before Leeds sent Moore–Handley a supplemental demand letter, dated June 10, 1993. Once again, Moore–Handley respond-

ed by arguing that the transfers were not recoverable and advised Leeds to abandon any possible preference action.

On November 12, 1993, Leeds filed in this Court the present adversary proceeding seeking to recover allegedly preferential transfers. This proceeding was just one of approximately 115 such actions Leeds filed at that time. Prior to filing any of these adversary proceedings, however, Leeds had retained the accounting firm of Bankruptcy Examiners, Inc., to review Leeds' records and conduct a preference analysis. This analysis revealed that, during the 90 days immediately preceding the bankruptcy, 235 creditors received aggregate payments in excess of $10,000.00 each from Leeds, and these payments totalled more than $20.8 million.[1] Based upon the information provided by the Bankruptcy Examiners analysis, Leeds commenced its action against Moore–Handley, claiming that $185,145.15 in prepetition payments were preferential transfers pursuant to 11 U.S.C. § 547(b).[2] Moore–Handley answered the complaint, asserting once again that any transfers made were protected by the ordinary course of business exception of 11 U.S.C. § 547(c)(2).[3]

Moore–Handley eventually filed a motion for summary judgment in this proceeding based upon its ordinary course of business argument. Accompanying the motion were several pages of financial and accounting statements and spreadsheets pertaining to the transfers in question. Upon receiving Moore–Handley's motion, Leeds asked for and received an extended response time in order to allow it to review the documentation provided by Moore–Handley. Once it had the opportunity to consider Moore–Handley's evidence, Leeds filed a response to the motion, virtually conceding that all transfers were subject to the ordinary course of business exception. Shortly thereafter, the Court entered an order and judgment dated November 22, 1994, granting Moore–Handley's motion for summary judgment.

Having prevailed, Moore–Handley filed the Motion *sub judice*, arguing that Leeds and its counsel should be sanctioned under FED. R.BANKR.P. 9011 for filing and pursuing this preference action. Moore–Handley argues that it was improper for Leeds to bring this action after being advised that the payments in question were within the ordinary course of business. Had Leeds adequately conducted a prefiling inquiry into the ordinary course of business exception, contends Moore–Handley, it would have discovered that its claim lacked merit. Instead, Moore–Handley contends that Leeds filed the complaint simply to extract a quick settlement. Leeds opposes the Motion, claiming that it presented a colorable argument to the Court

---

1. The analysis performed by Bankruptcy Examiners revealed that Leeds disbursed approximately $22,872,935.87 during the 90 day preference period. The transfers made to the 235 creditors who received over $10,000.00 each represented 91.27% of the total amount of disbursements Leeds made during that time.

2. This provision provides as follows:

 Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

 (5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 11 U.S.C. § 547(b).

3. This provision provides as follows:

 The trustee may not avoid under this section a transfer—

 . . . . .

 (2) to the extent that such transfer was—
 (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee;
 (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
 (C) made according to ordinary business terms.
 11 U.S.C. § 547(c)(2).

in this proceeding and denying any allegations of improper conduct.

### DISCUSSION

 In bringing this Motion before the Court, Moore–Handley argues that the conduct of Leeds and its counsel in this proceeding violates Rule 9011, which provides in pertinent part as follows:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

FED.R.BANKR.P. 9011(a). A determination of whether Leeds has violated Rule 9011 is left to the discretion of this Court as the trial court. *Skandinaviska–Enskilda Banken v. C.L.C. Marine Servs., Ltd. (In re SeaEscape Cruises, Ltd.),* 172 B.R. 1002, 1014 (S.D.Fla. 1994); *In re Brown,* 152 B.R. 563, 567 (Bankr.E.D.Ark.1993). Once a violation has been found, however, the mandatory language of Rule 9011 requires this Court to impose sanctions. *In re Armwood,* 175 B.R. 779, 788 (Bankr.N.D.Ga.1994) (Murphy, J.).

 The Court must use an objective standard to determine if the requirements of Rule 9011 have been met. *Donaldson v.*

*Clark,* 819 F.2d 1551, 1556 (11th Cir.1987); *California Fed. Bank v. Douglas (In re Douglas),* 141 B.R. 252, 256 (Bankr.N.D.Ga. 1992) (Cotton, J.).[4] It is not proper, however, to judge the conduct of a party by utilizing the benefit of hindsight. Instead, it is important to focus upon the facts and circumstances as they existed at the time of the filing. The rule sets out two separate requirements, the violations of which give rise to sanctions: (1) the court filing must be well grounded in fact and law and not frivolous; and (2) the document must not be filed for improper purposes. *See Armwood,* 175 B.R. at 788; *see also Phillips v. Burt (In re Burt),* 179 B.R. 297, 300 (Bankr.M.D.Fla.1995); *cf. Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 830 (9th Cir.1994) (noting that the two requirements are often overlapping). Since the allegations made by Moore–Handley suggest violations of both requirements, the Court will consider them separately below.

### A. Legal or Factual Basis to Pleading

 In order to ensure that a court pleading is well grounded in fact or law, Rule 9011 imposes upon an attorney a duty of reasonable inquiry before filing. Moore–Handley argues here that Leeds failed to make such a prefiling inquiry into the facts, otherwise it would have known that its preferential transfer action was completely devoid of merit. In considering Leeds' complaint, the Court notes that it sets forth allegations containing the necessary elements of a preferential transfer under 11 U.S.C. § 547(b). Moore–Handley does not claim that Leeds failed to conduct a proper inquiry as to the elements of a preferential transfer. Instead, it contends that Leeds failed to investigate whether the ordinary course of business defense applied to prevent the recovery of these preferences. Thus, the issue presented by Moore–Handley is whether Rule 9011 places a duty upon a plaintiff to make a reasonable

---

4. The Court notes that *Donaldson* is a case interpreting FED.R.CIV.P. 11 and not Rule 9011. Nevertheless, since the bankruptcy rule closely tracks the language of Rule 11 regarding the signing and verification of papers, case law interpreting Rule 11 is applicable to Rule 9011 cases. *See* *Grunewaldt v. Mutual Life Ins. Co. (In re Coones Ranch, Inc.),* 7 F.3d 740, 742 n. 4 (8th Cir.1993); *Whitney Apartments Assocs. v. McGlamry (In re Whitney Place Partners),* 123 B.R. 117, 120–21 (Bankr.N.D.Ga.1991) (Murphy, J.).

factual and legal inquiry into any affirmative defenses that may exist.

Unusual a position as it seems, case authority exists to lend arguable support to Moore–Handley's view point. In discussing the general obligations under Rule 11, one court has stated that "[p]art of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case." *White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *see also Babb v. Bridgestone/Firestone*, 861 F.Supp. 50, 53 (M.D.Tenn.1993) (noting that plaintiff would be justified in filing complaint if it had nonfrivolous argument that known affirmative defense was inapplicable). Citing to *White* as support, the Seventh Circuit has issued a similar statement within the context of Rule 9011. *In re Excello Press, Inc.*, 967 F.2d 1109, 1113 (7th Cir.1992); *see also Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 181 (10th Cir.1991). While this Court does not totally reject the views espoused in *White* and *Excello Press*, it is uncomfortable with making such a general statement pertaining to affirmative defenses and will not do so here.

The Court, however, does not find it necessary to take a position inconsistent with that expressed by the Tenth and Seventh Circuits. Read in their narrowest sense, *White* and *Excello Press* stand for the proposition that there is no *per se* rule that courts can never impose sanctions for a party's failure to investigate affirmative defenses. *See, e.g., Excello Press*, 967 F.2d at 1112; *see also F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1299 (5th Cir.1994) (applying Rule 11 and citing to *Excello Press* ). The Court does not disagree with such a proposition. Nevertheless, it seems clear that there is no obligation under Rule 9011 to factually inquire into any and all affirmative defenses a party might possibly assert after the filing of the complaint, particularly where the party asserting the defense carries the burden of proof.

This having been said, however, the question remains as to what extent Rule 9011 requires a plaintiff to make an inquiry. In *White*, the Tenth Circuit said that such a requirement exists only where the affirmative defense is an "obvious" one. *White*, 908 F.2d at 682. In *Excello Press*, the Seventh Circuit further limited any prefiling duty to investigate defenses by stating the following:

> A reasonable pre-filing inquiry does not require pre-filing investigation of an affirmative defense when subsequent discovery would be beneficial to the development of the underlying facts and to evaluation of the legal validity of that affirmative defense. Rule 9011, like Rule 11, should not be read to conflict with Rule 8, which authorizes notice pleading with discovery to follow. The inquiry required by those rules is a brief pre-filing investigation, not pre-filing discovery.

*Excello Press*, 967 F.2d at 1115 (citation omitted). This passage from *Excello Press* is particularly enlightening in that it identifies an important practical problem in requiring any meaningful investigation into possible affirmative defenses. Affirmative defenses normally are raised after an action is commenced, and the evidence needed to establish the merits of such a defense is sought through the discovery process. To accept the argument Moore–Handley currently is asserting, however, would, in effect, require a plaintiff to conduct discovery prior to filing a complaint. Such a requirement contravenes the purpose of notice pleading embodied in the Federal Rules of Civil and Bankruptcy Procedure. Therefore, this Court declines to find a general requirement in Rule 9011 that a plaintiff has to make a prefiling investigation into possible affirmative defenses. Instead, the Court concludes that Rule 9011, and likewise Rule 11, places no prefiling duty upon a plaintiff to conduct an inquiry into possible affirmative defenses, except in those unusual or extreme circumstances where such a defense is obvious and needs no discovery to establish.[5]

---

5. The Tenth Circuit in *White* appears to be the source of case authority suggesting that there is a duty on the plaintiff to investigate into possible obvious affirmative defenses. In making this statement, the Tenth Circuit cites as support William W. Schwarzer, *Rule 11 Revisited*, 101 Harv. L.Rev. 1013, 1023–24 (1988). Interestingly, the

In considering the facts and circumstances of this adversary proceeding, the Court finds nothing improper in the prefiling conduct of Leeds or its counsel. Within the context of a preferential transfer action, the Bankruptcy Code clearly assigns the burden of proof. The debtor carries the burden of proving that the transfers in question were preferential under the terms of 11 U.S.C. § 547(b), but the creditor has the burden of establishing the existence of one of the exceptions found in section 547(c), including the ordinary course of business exception. 11 U.S.C. § 547(g). Therefore, the Code placed upon Leeds the burden of presenting its case that the transfers in question were preferential transfers, and Rule 9011 required that such an argument be well grounded in fact and law. There is no question that Leeds did as much when it filed its complaint.

In contrast, Moore–Handley carried the burden of establishing the ordinary course of business defense. It was not incumbent upon Leeds to conduct a prefiling investigation into this defense unless it was so obvious and needed no discovery to establish. Such unusual circumstances did not exist in this case. In fact, the Court finds it hard to imagine any preference action in which the ordinary course of business defense would be so obvious as to make a preference complaint a bad faith filing. It was proper in this proceeding for Leeds to first file its complaint and then utilize the discovery process to determine the validity of Moore–Handley's defense.

■ Moore–Handley points out that it had notified Leeds prior to the commencement of the case of its ordinary course of business defense. The mere fact, however, that a plaintiff is aware that an affirmative defense may be asserted does not require it to make a prefiling investigation into the merits of the defense. This is particularly true where, as here, the defendant fails to provide any evidence to support its claimed defense prior to the filing.[6] Also, the Court notes that the ordinary course of business defense is the most common exception asserted in a preference action. Such an argument is virtually expected as a matter of course to a preferential transfer claim. In other words, the fact that Moore–Handley notified Leeds that it would assert such a common defense did not make the defense an obvious one.

In this proceeding, Leeds conducted an inquiry into its own records and recognized that it had sufficient evidence to pursue a preferential transfer claim against Moore–Handley. Leeds chose to do so despite being advised of a possible affirmative defense which Moore–Handley had the burden of establishing. Once Leeds had the opportunity to review the defense evidence Moore–Handley provided through discovery, Leeds conceded defeat. Such evidence was provided, however, *after* Leeds commenced its preference action.[7] After objectively viewing all the facts and circumstances as they existed at the time of filing, the Court finds that Leeds' complaint was sufficiently well grounded in law and fact in accordance with Rule 9011. Leeds did enough to learn that it had a colorable preference action, one not defeated by obvious affirmative defenses. *See Excello Press,* 967 F.2d at 1115; *cf. White,* 908 F.2d at 682 (noting that sanctions are not required where party "has a colorable argument as to why an otherwise affirmative defense is inapplicable in a given situation"). As such, sanctions are not warranted.

### B. Filing for Improper Purpose

■ The second basis by which Leeds may be sanctioned under Rule 9011 is in a situa-

---

Court finds nothing within the cited pages which directly supports the Tenth Circuit's statement.

**6.** Even if Moore–Handley had provided some documentation to support its claim of a defense, it would have been proper for Leeds to commence this proceeding nonetheless. Due to the varying degrees by which courts have applied the exception of 11 U.S.C. § 547(c)(2), Leeds had a colorable argument that some or all of the transfers at issue were outside the ordinary course of business.

**7.** By the time Leeds had a chance to review the evidence supplied by Moore–Handley, the Court already had ruled on the ordinary course of business defense in some of the other preference actions commenced by Leeds. Admittedly, the Court applied the defense rather broadly to the benefit of creditors. Leeds, however, was not aware of what kind of approach the Court would take until *after* it commenced this proceeding.

tion in which a document has been "interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case." FED.R.BANKR.P. 9011(a); *see Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir.1991); *Valley Nat'l Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1443 (9th Cir.1991), *cert. denied* 502 U.S. 826, 112 S.Ct. 94, 116 L.Ed.2d 66. In this proceeding, Moore–Handley contends that Leeds' complaint was filed for the improper purpose of trying to extract a quick settlement. The Court notes that the language of Rule 9011 does not list an attempt to force a settlement as an improper purpose. Nevertheless, the use of the phrase "such as" signifies that courts may find other conduct sanctionable even though it is not expressly listed in the Rule. *See, e.g., Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir.1991) (raising claim simply to delay collection on note was improper purpose). Therefore, under the right circumstances, filing a complaint to force a settlement may qualify as improper conduct prohibited by Rule 9011.

██ Nevertheless, seeking a settlement after filing a complaint is not sanctionable conduct in and of itself. In fact, such conduct is not at all unusual, since more often than not civil actions are settled before being presented to a court for judgment on the merits. The reason that settlement often occurs is because the parties find it more desirable to reach some sort of agreement early on to avoid the high costs of protracted litigation.[8] The Court finds nothing objectionable about this practice. The practice does become objectionable and sanctionable, however, when one party files an action that is objectively baseless and lacking in merit with the hope that the other party will settle to cut its litigation costs.

██ In considering the objective facts and circumstances of this proceeding, the Court does not find any improper conduct on the part of Leeds. Leeds' claim against Moore–Handley was not objectively baseless or lacking in merit. Leeds had a colorable argument that the transfers in question were preferential, and the success of Moore–Handley's ordinary course of business defense was not obvious at the time the complaint was filed. It was neither unusual nor objectionable for Leeds to attempt to reach a settlement with Moore–Handley on the claim in order to reduce litigation costs.[9] Therefore, the Court finds that Leeds did not file its complaint or any pleadings for improper purposes in violation of Rule 9011.

### CONCLUSION

Rule 9011 of the Federal Rules of Bankruptcy Procedure places no prefiling duty upon a plaintiff to conduct an inquiry into possible affirmative defenses, except in those unusual or extreme circumstances where such a defense is obvious and needs no discovery to establish. In this proceeding, Leeds did not violate its prefiling duty under Rule 9011 when it filed its preference action against Moore–Handley. Furthermore, Leeds did not file its complaint for any improper purposes, even though it attempted to settle its claim with Moore–Handley prior to an adjudication on the merits. Accordingly, Moore–Handley's Motion for Sanctions is hereby **DENIED.**

**IT IS SO ORDERED.**

---

**8.** This case provides a good example of how expensive litigation costs can become. The Court notes that Moore–Handley's counsel has amassed a surprisingly high bill amounting to over $23,000.

**9.** The Court notes that Leeds has settled and dismissed most of the over 100 preference actions it commenced in the fall of 1993. Not only has such settlement reduced litigation costs to the parties involved, it has saved this Court a considerable amount of time and judicial resources.