In re BERGER INDUSTRIES, INC., Debtor.

Berger Industries, Inc., Plaintiff,

v.

Artmark Products Corp., Defendant.

Bankruptcy No. 193–19648–353.
Adversary No. 195–1632–353.

United States Bankruptcy Court, E.D. New York.

Aug. 27, 2003.

Angel & Frankel, P.C., By Laurence May, Esq., New York City, for Debtor.

Brown & Fox, P.C., By Rodney A. Brown, Esq., New York City, for Defendant.

### MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SANCTIONS

JEROME FELLER, Bankruptcy Judge.

Artmark Products Corp. ("Artmark"), the prevailing party in the above-captioned preference action ("Preference Action") instituted by Berger Industries, Inc. ("Debtor"), requests the imposition of sanctions ("Sanctions Motion") upon Angel & Frankel, P.C., counsel for the Debtor ("A & F"), for commencing the Preference Action on behalf of the Debtor. Artmark seeks an order directing payment by A & F of attorneys' fees, costs and disbursements in the sum of $99, 511.39, that it incurred in

defending the Preference Action. The Sanctions Motion is brought by Artmark pursuant to Fed. R. Bankr. P. 9011 ("Bankruptcy Rule 9011"), Fed. R. Civ. P. 11 ("Rule 11") and 28 U.S.C. § 1927. Having been advised by the Clerk's Office that it was necessary to reopen the adversary proceeding to file the Sanctions Motion, Artmark also moves to reopen the Preference Action. A & F opposes reopening of the adversary proceeding and cross moves with the Debtor for sanctions against Artmark and its counsel, Brown & Fox, P.C., for filing the Sanctions Motion ("Cross–Motion").

Having studied the motion papers, affidavits and exhibits annexed thereto, memoranda of law, considered the parties' arguments and reviewed our decision in the Preference Action, *Berger Indus. Inc. v. Artmark Products Corp. (In re Berger Indus., Inc.)*, 260 B.R. 639 (Bankr.E.D.N.Y. 2001), and for the reasons hereinafter set forth, we grant the motion to reopen and deny both the Sanctions Motion and the Cross–Motion.

### I.

The Debtor was a manufacturer of electric couplings and connectors, steel tubing and conduits. Artmark is an importer of industrial components that were crucial to the Debtor in its manufacturing operations. Artmark supplied product needed by the Debtor to continue operations prior to and after commencement of the Debtor's bankruptcy case. An involuntary Chapter 7 petition was filed against the Debtor on November 16, 1993 by several steel suppliers. Two days later, an order was entered converting the case to chapter 11 on request of the Debtor. On November 13, 1995, the Debtor filed the complaint which initiated the Preference Action. The complaint sought recovery of $177, 631.36 in alleged preferential pay-

ments to Artmark made during the ninety days preceding commencement of the Debtor's involuntary case ("Preference Period").

The Preference Action was long, bitter and hotly contested. It endured for close to 6½ years. There was never any serious dispute as to the existence of the elements constituting preferential transfers contained in 11 U.S.C. § 547(b). At issue throughout the litigation were certain affirmative defenses to preferential transfers contained in 11 U.S.C. § 547(c). Specifically, Artmark asserted from the outset that the challenged transfers were not avoidable on the grounds of the new value and/or ordinary course of business affirmative defenses, i.e., 11 U.S.C. § 547(c)(1) and 11 U.S.C. § 547(c)(2). Recurring efforts to settle the matter proved futile and discovery disputes were common fare. Artmark filed a pre-trial motion requesting sanctions for commencing the Preference Action, which motion was denied without prejudice, as premature. Acknowledging, in part, the new value defense, the Debtor reduced its claim for preferential payments to $77,000.00 and $68,735.00 in January 1997 and July 1998, respectively. Ultimately, the Preference Action was the subject of a two day trial which took place in July 1999. At the outset of the trial, the Debtor, giving some further credence to the new value defense, reduced its claim for preferential payments to $55,029.37. The entire trial centered on the ordinary course of business affirmative defense asserted by Artmark. Post-trial submissions were filed and post-trial arguments were heard and, on April 12, 2001, we issued our decision sustaining Artmark's ordinary course of business affirmative defense and dismissing the Preference Action.

Two weeks after dismissal of the Preference Action, in usual course, the adversary proceeding was closed. Approximately four months later, Artmark filed its Sanctions Motion and related motion to reopen. A & F countered with its Cross-Motion. The parties declined an evidentiary hearing. Instead, they opted to rely on oral argument and the papers submitted for and against their respective motions.

## II.

■ Whether a motion to reopen a concluded adversary proceeding is procedurally necessary preliminary to the filing of a sanctions motion is uncertain. Federal courts do retain jurisdiction to consider ancillary matters, such as sanctions, after the underlying litigation has been finalized. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394–96, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). On the other hand, since the Preference Action was not only dismissed but also formally closed on the Court's docket, it is probably the wiser course to consider reopening it as a prerequisite to consideration of the motions for sanctions.

■ Artmark's Sanctions Motion was filed timely. "[I]t is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time the motion is decided or shortly thereafter." FED. R. CIV. P. 11 advisory committee note on the 1983 amendment. The filing of the motion to reopen four months after the swift closing of the Preference Action by the Court Clerk is not unreasonable under the circumstances at bar. Accordingly, we grant Artmark's motion to reopen for the limited purpose of considering the charges that A & F abused the judicial process and, in turn, the charges of A & F that Artmark did likewise.

## III.

Bankruptcy Rule 9011, analogous to Rule 11 under the Federal Rules of Civil

Procedure, imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for an improper purpose.

 Sanctions may not be employed as an automatic penalty against an attorney or a party advocating the losing side of a dispute. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3rd Cir.1987). However, it is sometimes difficult to divine the point at which litigation turns from merely losing to losing and sanctions. To assist in such determination, lower courts are instructed to "resolve all doubts in favor of the signer." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). As more fully articulated in an earlier decision of the Second Circuit:

> Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success..., Rule 11 has been violated. Such a construction serves to punish only those who would manipulate the federal court system for ends inimicable to those for which it was created.

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *accord Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993); *Associated Indem. Corp. v. Fairchild Indus. Inc.*, 961 F.2d 32, 34–35 (2d Cir.1992); *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir.1988).

### IV.

Artmark proclaims that sanctions are mandated because the complaint in the Preference Action was filed absent any inquiry or investigation by A & F of the validity of the Debtor's claims. This charge necessarily assumes some factual investigation by Artmark. Yet, Artmark fails to proffer any evidentiary proof that A & F did not conduct an inquiry. Instead, Artmark argues that since it was so clear from the inception of the Preference Action that it would prevail, A & F could not have possibly conducted any pre-filing investigation.

It is interesting that Artmark does not claim that A & F failed to conduct a proper inquiry as to the existence of the elements of a preferential transfer before commencing the Preference Action. Rather, Artmark contends the A & F failed to investigate whether affirmative defenses were available to prevent recovery of what would otherwise constitute *prima facie* preferential transfers under 11 U.S.C. § 547(b). Thus, the issue presented by Artmark is whether Bankruptcy Rule 9011 places a duty upon a plaintiff to make inquiry into possible affirmative defenses.

Artmark argues that because the affirmative defenses to preference actions are contained in 11 U.S.C. § 547(c), i.e., the statute itself, the pre-filing duty of inquiry or investigation by a plaintiff as to affirmative defenses is no different than that required for a *prima facia* case under 11 U.S.C. § 547(b). This proposition does not withstand analysis and, we believe, must be rejected. Requiring a plaintiff to anticipate affirmative defenses to avoid Bankruptcy Rule 9011 sanctions reorders traditional burdens of pleading and would, in effect, impermissibly change the requirement for a reasonable pre-filing inquiry into pre-filing discovery. See *In re Excello Press, Inc.*, 967 F.2d 1109, 1115 (7th Cir.1992). Indeed, there is authority suggesting that Bankruptcy Rule 9011 and

Rule 11 do not require a plaintiff to conduct an investigation concerning the merits of any affirmative defenses before the case is filed. *Nolden v. Athearn, Chandler & Hoffman (In re W. Die Casting Co.),* 106 B.R. 645, 649 (Bankr.N.D.Cal.1989) ("Bankruptcy Rule 9011 does not impose a burden on a plaintiff to conduct pre-filing discovery of an asserted defense. By it terms, Bankruptcy Rule 9011 requires a plaintiff only to make a reasonable inquiry concerning the factual and legal basis for the plaintiff's own claim."); *Togut v. Sun Bank/Miami, N.A. (In re Concorde Nopal Agency, Inc.),* 92 B.R. 956, 958 (Bankr. S.D.Fla.1988) ("A Plaintiff is not required by Rule 11 to determine at his peril, before he files suit, that there is no affirmative defense available to the defendant.").

■ A *per se* rule negating any requirement for a pre-filing investigation of affirmative defenses is unacceptable to this Court. The better view, we believe, would make any duty of pre-filing inquiry contingent upon the circumstances of the case. The Seventh Circuit articulated this perspective as follows:

> Thus how much investigation is reasonable in a given case is a question of line-drawing. Ordinarily, it will be reasonable for a plaintiff's counsel not to make a pre-filing investigation regarding affirmative defenses. *See In re Western Die Casting Co.* 106 B.R. 645, 649 (Bankr. N.D.Cal.1989). However, at times an attorney may have a responsibility to examine 'whether any *obvious* affirmative defenses bar the case.' (quoting *White v. Gen. Motors Corp.,* 908 F.2d 675, 682 (10th Cir.1990)), (emphasis added) *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788 112 L.Ed.2d 850.

*In re Excello Press, Inc.,* 967 F.2d at 1113; *Leeds Bldg. Prod. Inc. v. Moore–Handley, Inc.,* 181 B.R. 1006, 1010 (Bankr.N.D.Ga. 1995) ("Rule 9011, and likewise Rule 11,

places no pre-filing duty upon a plaintiff to conduct an inquiry into possible affirmative defenses, except in those unusual or extreme circumstances where such a defense is obvious and needs no discovery to establish.").

■ The success of Artmark's ordinary course of business defense was hardly obvious at the time the complaint was filed. A & F had information from its client, on which it was entitled to rely, which suggested that the payments made by the Debtor during the Preference Period were not made in the ordinary course. *See* FED. R. CIV. P. 11 advisory committee's note on 1983 amendment. Moreover, in order to prevail on this defense, not only did Artmark have to prove that the payments were made in the ordinary course of business between the Debtor and Artmark, but also according to ordinary business terms. 11 U.S.C. § 547(c)(2)(C). This provision required objective proof by Artmark that the subject payments were ordinary in relation to the prevailing practices in its industry, i.e., the industrial components industry. *In re Berger Indus., Inc.,* 260 B.R. at 648; *See Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)* 78 F.3d 30, 41–43 (2d Cir.1996). A & F did not have such information and could not have been expected to obtain such data prior to commencement of the Preference Action. In sum, sanctions are not appropriate where, as here, the potential defense is factually complex and all necessary facts are not available to the plaintiff.

*V.*

■ Payments to Artmark by the Debtor during the Preference Period exceeded $190,000. The complaint filed in the Preference Action sought the recovery of $177,631.36 in preferential payments. As indicated above, during the course of the lawsuit, the Debtor gave increased recog-

nition to the new value defense and reduced its claim, first to $77,000, then to $60,735 and finally, at trial, to $55,029.77. Artmark contends that this changing amount demonstrates that A & F failed to properly investigate the Debtor's claim. This argument is without merit. Artmark cites no authority for the proposition that Bankruptcy Rule 9011 or Rule 11 sanctions are warranted against a law firm on the grounds that it and its clients agree during the course of litigation to reduce the amount of a claim. On the contrary, abandoning a claim that appears unlikely to succeed is responsible advocacy to be commended and not an abuse of the court's process to be deterred. The judicial process benefits when counsel reduces claims in dispute by objectively reappraising the strengths of its position throughout the course of litigation. Bankruptcy Rule 9011 and Rule 11 were not intended to inhibit such activity by permitting it to be characterized by an adversary as an admission of a fatal defect in a lawsuit.

## VI.

■ In July 1998, A & F delivered to Artmark for settlement purposes an affidavit of Steven Glusky, the Debtor's former director of operations ("Glusky Affidavit"). The substance of the Glusky Affidavit was that there was a change in the pattern of collection activity by Artmark during the Preference Period. These changes included increased monitoring of the Debtor's account and altering or threatened altering of an existing business relationship. Artmark labels the Glusky Affidavit as perjurious and charges that A & F was complicit in the preparation, proffer and reliance upon that perjurious affidavit. Artmark further asserts that the purpose of the Glusky Affidavit was to fabricate facts to rebut Artmark's ordinary course of business defense. Accordingly, Artmarks seeks sanctions pursuant to 28 U.S.C. § 1927,[1] alleging that A & F vexatiously caused the Preference Action to be multiplied, in a misguided attempt to defeat the ordinary course of business defense, as a result of its involvement with the Glusky Affidavit.[2]

We would emphasize that Artmark presented no evidence whatsoever of perjury or subornation of perjury within the meaning of the federal criminal statutes. A person testifying under oath violates the perjury statute, 18 U.S.C. § 1621, if he gives false testimony relating to a material matter with the willful intent to give false testimony and not because of confusion, mistake or faulty memory. *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). Subornation of perjury is perpetrated when a person "procures another to commit perjury". 18 U.S.C. § 1622.

It is true that the Glusky Affidavit, a subsequent deposition of Glusky taken by Artmark and Glusky's trial testimony do contain inconsistencies. Overall, however, Glusky's statements were marked by a common thread which, absent proof to contrary, we must assume were declared in good faith and therefore do not rise to the level of warranting sanctions under 28

---

**1.** In relevant part, 28 U.S.C. § 1927 provides as follows:

Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees incurred because of such conduct.

**2.** Artmark also argues that the Glusky affidavit warrants sanctions under Bankruptcy Rule 9011. Bankruptcy Rule 9011 is inapplicable to the Glusky Affidavit. The Glusky Affidavit was not presented to the Court by A & F; it was Artmark and not A & F that submitted the Glusky affidavit to the Court.

U.S.C. § 1927. Whether in his affidavit, deposition or trial testimony, albeit with certain disparities, Glusky stated that, during the Preference Period, Artmark departed from prior collection practices in various ways and threatened to withhold delivery of new product, unless the Debtor took steps to reduce its outstanding obligations to Artmark for prior product deliveries. Glusky was steadfast in his perception that Artmark exploited the economic leverage it possessed over the Debtor.

We concluded, after trial, that Glusky's statements lacked credibility and reliability. The absence of testimonial credibility and reliability must not be confused with perjury and subornation of perjury within the meaning of 11 U.S.C. § 1621 and 1622. And, we hereby admonish both Artmark and its counsel for their loose usage of such technical terms that have far reaching consequences, particularly on the plight of law firms. It might be recalled that one of Artmark's key witnesses at trial, Alan Meltzer, Artmark's former import sales manager, was also found to lack credibility and reliability. *See In re Berger Indus., Inc.*, 260 B.R. at 647 n. 10.

### VII.

■ As indicated above, before the Court is also a Cross–Motion for sanctions filed by A & F and the Debtor. A & F is rightfully critical of the semantics employed by Artmark in its Sanctions Motion. A & F argues that because Artmark "embroidered its claims with scurrilous charges of criminality, denial of the motion alone is too lenient a result." [3] Accordingly, A & F requests the Court to i) direct Artmark and its counsel to file a written retraction, reasonably acceptable to the Debtor and A & F, of their charges of perjury, subornation of perjury, fabrication of evidence and extortion; ii) impose monetary sanctions; and iii) grant whatever relief the Court, in the proper exercise of its discretion, deems just and appropriate. At oral argument on the sanction motions A & F clarified it request, advising that the retraction is what is important to the firm and that is what A & F really seeks, stressing that, "he who steals my purse takes money but he who steals my good name takes something more valuable than that." [4]

Artmark has presented no proof of perjury, subornation of perjury, fabrication of evidence or extortion. To be sure, having been sued by the Debtor in what Artmark considered a meritless lawsuit invited some disappointment, but hardly such strident and extreme remarks. Nonetheless, to direct a written retraction by Artmark and its counsel will only invite more pointless litigation and incur a further waste of judicial time. The Preference Action, including the sanctions phase, has now lingered for almost 8 years; it is time for closure. This memorandum opinion should achieve for A & F what it sought to obtain via the Cross–Motion, a vindication of its name.

### VIII.

For the forgoing reasons, it is hereby

ORDERED, that the motion to reopen the above-captioned adversary proceeding is granted for the limited purpose of determining the motions for sanctions; and it is further

---

**3.** Affidavit of Laurence May, Esq., sworn to October 21, 2001, in opposition to Sanctions Motion and in support of Cross–Motion at P. 17.

**4.** Hearing transcript of December 11, 2001, at p. 33.

ORDERED, that the Sanctions Motion filed by Artmark Products Corp. is denied; and it is further

ORDERED, that the Cross–Motion filed by Berger Industries, Inc. and Angel & Frankel is denied.